*SM*

UNITED STATES DISTRICT COURT
FOR THE Northern District of Illinois
Eastern Division  RECEIVED

2021 APR 30  AM 4:00

CLERK
U.S. DISTRICT COURT

Gwenesther Manning )
Plaintiff, )
)
) 21 CV 1440
v. )
)
Louis DeJoy, Postmaster General )
U.S. Postal Service )
Defendant. )

# FILED

MAR 25 2021

THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

### AMENDED COMPLAINT

Comes now, Gwenesther Manning, plaintiff in the above captioned cause and fills this

Amended Complaint pursuant to Rule 15(a) of the Federal Rules of Civil Procedure and state in

support as follows:

A complaint was filed with the Agency on February 24, 2018. A Final Agency Decision

(FAD) was issued October 26, 2018, and received November 1, 2018.

The FAD was appealed to the Equal Employment Opportunity Commission (EEOC). EEOC

issued affirmed the Agency's Final. A request for reconsideration was submitted. The Decision on

my request for reconsideration was issued November 30, 2020 and received on December 14, 2020.

The instant complaint was timely filed on March 12, 2021, within 90 days of receipt of the

decision of the Equal Employment Opportunity Commission as required.

This action for employment discrimination is limited to issue no. 8 of EEOC's Decision on

Reconsideration, "On March 30, and 31, 2018, CSM2 told Complainant that she could not return to

work until her request for light duty had been approved." The dates are incorrect, dates of March 30

and 31, 2018 should have been March 29, and 30, 2018.

The Defendant engaged in disability discrimination. My claim is further supported by multiple grievance decisions for when I was either put off the clock or denied an equal opportunity to return to work under similar circumstances.

The facts supporting my claim are as follows:

1. On March 29, 2018, Tiffany Bates (Bates) the manager at Twenty Second Station, 2035 S. State St., Chicago, IL 60616, stopped me as I worked the PO Boxes and told me that she could not let me work because I had not been approved for light duty.

2. Also on March 29, 2018, I completed PS Form 3971, Request for or Notification of Absence in which I requested seven (7) hours of leave without pay before I left the building. My Form 3971 was approved by Bates attached to as Exh. A-1.

3. On March 30, 2018, when I arrived at work, Bates instructed me to meet her in her office.

4. On March 30, 2018, once inside Bates office, there was a brief conversation with Bates, Cassandra Glover the union steward and myself. Bates told me that I had to leave the building and that I was not to return until I had been approved for light duty.

5. March 30, 2018, I completed PS Form 3971, Request for or Notification of Absence requesting seventy-nine (79) hours of leave and left the building. My Form 3971 was approved by Bates. (Exh. A-2)

6. Bates signed and approved PS Forms 3971 before I left the building on March 29, and 30, 2018.

7. After Ms Bates arrival at Twenty Second Street Station on or around March 3, 2018, under Bates management, I worked an average of six (6) hours per day.

8. On March 6, 2019, the same manager, Bates sent me a Five Day -Absence Notice

and a notice for an Investigative Interview which was scheduled for March 14, 2019 at 10:00 a.m.. I reached out to Bates requesting to reschedule the Investigative Interview. (Exhs. B-1& B2)

9.     By notice dated March 13, 2019, I was advised that the Investigative Interview had been rescheduled for Friday March 22, 2019 at 12 noon. (Exh. B-3)

10.    However, by notice dated March 27, 2019 the Investigative Interview was rescheduled for Friday April 5, 2019 at 12:00 noon. There was also another Five-Day Absence Notice enclosed dated March 27, 2018. (Exhs. B-4 & B5)

11.    I attended the Investigative Interview on March 27, 2019. During the interview, I was asked for medical documentation to justify my extended absence.

12.    I responded that I would not be submitting medical documentation for my absence because I was not absent due to medical reasons.

13.    During the Investigative Interview, I articulated that I was absent because Bates put me off the clock.

14.    After the interview concluded, I was instructed to report for duty on or around April 22, 2019.

15.    I returned to duty on or around April 22, 2019 without submitting a new request for Light Duty.

16.    In the interim, I remained off the clock or restated, out of service, over a year from on or around March 31, 2018 until on or around April 22 of 2019.

17.    I returned to work a year later, under Bates' management, without being approved for light duty.

18.    There is no provision in the Employees Labor Manual (ELM) which state that management is authorized to pull an employee out of service and not return until they have been

approved for Light Duty.

19.     There is no provision in the Collective Bargaining Agreement which support Bates

taking me out of service until I had been approved  for light.

Therefore, I was subjected to an adverse employment action for which relief is available.

**Relief sought:**

1.     Lost wages, benefits, prejudgment interest, post-judgment interest, and costs,

including reasonable attorney fees if necessary.

2.     Grant any other relief the Court deems just and equitable.


Gwenesther Manning, *Pro Se*
19214 Lange Street
Lansing, IL 60438
312-622-5783

MANNING V DEJOY 21 CV 1440

**UNITED STATES POSTAL SERVICE**

### Request for or Notification of Absence

| Employee's Name (Print last, first, MI.) | Employee ID | Date Submitted (MM/DD/YYYY) | No. of Hours Requested |
|---|---|---|---|
| MANNING, GWENESTHER | 0269 0872 | 3/29/2018 | 7 |

| Installation (For postmaster's leave, show city, state, and ZIP Code) | N/S Day | Pay Loc. No. | D/A Code | From: Date | Hour |
|---|---|---|---|---|---|
| TWENTY SECOND ST 60616 | | 016 | | 3/29 | |

| Time of Call or Request | Scheduled Reporting Time | If Needed, Employee Can Be Reached At: | Thru: Date | Hour |
|---|---|---|---|---|
| | | ☐ Do not call | 3/29 | |

| | PP | Year |
|---|---|---|
| SCHEDULED / UNSCHEDULED | | |

**Type of Absence**
- ☐ Annual
- ☐ Holiday/AL Lv Exch
- ☐ Carrier 701 Route
- ☑ LWOP (See reverse)
- ☐ Sick (See reverse)
- ☐ Late
- ☐ COP (See reverse)
- ☐ Other

**Documentation** (For official use only)
- ☐ FMLA Requested (Certification review – HRSSC)
- ☐ For COP Leave (CA1 on file)
- ☐ For Advanced Sick Leave (PS 1221 on file)
- ☐ For Military Leave (Orders on file)
- ☐ For Court Leave (Summons reviewed)
- ☐ For Higher Level (PS 1723 on file)
- ☐ Scheme Training Testing Qualifying (Memo on file)

| Revised Schedule for (Date) | Approved in Advance |
|---|---|
| | ☐ Yes  ☐ No |

Begin Work

Lunch Out   Lunch In

End Work

Total Hours

| | |
|---|---|
| Sat 01 | |
| Sun 02 | |
| Mon 03 | |
| Tue 04 | |
| Wed 05 | |
| Thur 06 | |
| Fri 07 | |
| Sat 08 | |
| Sun 09 | |
| Mon 10 | |
| Tue 11 | |
| Wed 12 | |
| Thur 13 | |
| Fri 14 | |

**Remarks** (Do not enter medical information. See Privacy Act Statement on reverse of this form.)
MANAGEMENT REDUCED MY WORK HOURS TO 1 HOUR PER DAY. THIS IS INVOLUNTARY. THIS ACTION IS ALLEGEDLY DUE TO MY RESTRICTIONS.

| Employee's Signature and Date | Signature of Person Recording Attendance and Date | Signature of Supervisor and Date Notified |
|---|---|---|
| Gwenesther Manning 3/29/2018 | | |

**Official Action on Application** (Return copy of signed request to employee.)

☑ Approved
☐ Disapproved (Give reason below)

Due to employee Restrictions employee cannot work 1 hour

Do not check an FMLA box until you verify the FMLA designation.
- ☐ FMLA Designation is PENDING
- ☐ FMLA Protected
- ☐ Not FMLA Protected

| Signature of Supervisor and Date |
|---|
| L. Bates 3/29/18 |

☐ Continued on reverse

PS Form 3971, October 2017 (Page 1 of 2) PSN 7530-02-000-9136

**Warning:** The furnishing of false information on this form may result in a fine of not less than $10,000 or imprisonment of not more than 5 years, or both (18 U.S.C. 1001).

MAR 29 12.08

---

**Reason I was incapacitated for duty during this absence:**
- ☐ Sickness
- ☐ On-the-Job Injury
- ☐ Off-the-Job Injury
- ☐ Exposed to a Contagious Disease
- ☐ Pregnancy, Prenatal Care, or Childbirth
- ☐ Undergoing Medical, Dental, or Optical Examination or Treatment (Job-related)
- ☐ Undergoing Medical, Dental or Treatment (Not job-related)

**Reason I was/will be unavailable for duty during this absence:**
- ☐ Sick Leave for Dependent Care (See ELM)
- ☐ Birth of a Child/Bonding
- ☐ To Care for a Family Member (See ELM)
- ☐ Placement of a Child with Employee for Adoption or Foster Care
- ☐ A Military Family Member's Qualifying Exigency
- ☐ To Care for an Injured or Ill Military Family Member

**LWOP - Union Official (Required Certification)**
By signing this form, I certify that this request is not for the purpose of engaging in partisan political activity as defined by the Hatch Act and its implementing regulations.

**I am requesting Family and Medical Leave Act (FMLA) protection for this absence:**
- ☐ This request is associated with a new condition. (You will receive an FMLA packet in the mail with forms and instructions.)
- ☐ My approved or pending approval case number for this condition is:

Employee must not be asked to disclose personal medical information to local management. FMLA certification must be mailed to HRSSC.

**Additional Documentation Required as follows:**

| | Codes | Time Card | FMLA Dep. Care | Time Clock |
|---|---|---|---|---|
| Annual | 55 | | | 05500 |
| Annual – FMLA | 55 | 01 | | 05599 |
| Sick | 56 | | | 05600 |
| Sick – FMLA | 56 | 02 | | 05699 |
| Sick – Dependent Care | 56 | 08 | | 05697 |
| Sick – Dependent Care – FMLA | 56 | 07 | | 05698 |
| Absent Without Leave | 24 | | | 02400 |
| Act of Nature | 78 | | | 07800 |
| Blood Donor | 89 | | | 06900 |
| Civil Defense | 77 | | | 07700 |
| Civil Disorder | 81 | | | 08100 |
| COP – USPS | 71 | | | 07100 |
| COP – USPS – FMLA | 71 | 03 | | 07199 |
| Court Duty | 61 | | | 06100 |
| Donated | 45 | | | 04500 |
| Donated – FMLA | 46 | | | 04600 |
| HQ Authorized Administrative | 79 | | | 07900 |
| Holiday – AL Leave Exchange | 28 | | | 02800 |
| LWOP – Part Day | 59 | | | 05900 |
| LWOP – Part Day – FMLA | 59 | 05 | | 05999 |
| LWOP – Full Day | 60 | | | 06000 |
| LWOP – Full Day – FMLA | 60 | 06 | | 06099 |
| LWOP – IOD/OWCP | 49 | | | 04900 |
| LWOP – IOD/OWCP – FMLA | 49 | 04 | | 04999 |
| LWOP – In Lieu of Sick Leave | 59 or 60 | | | 05901 or 06001 |
| LWOP – Maternity | 59 or 60 | | | 05905 or 06005 |
| LWOP – Military | 44 | | | 04400 |
| LWOP – Personal Reasons | 59 or 60 | | | 05903 or 06003 |
| LWOP – Profirred | 59 or 60 | | | 059 |
| LWOP – Suspension | 59 or 60 | | | 059 |
| LWOP – Suspension Pend Term | 59 or 60 | | | 059 |
| LWOP – Union Official | 84 | | | 084 |
| Military | 67 | | | 06700 |
| Relocation | 80 | | | 08000 |
| Voting Leave | 85 | | | 08500 |
| Other Paid Leave | 86 | | | 08600 |

| | |
|---|---|
| SCHEDULED / UNSCHEDULED | PP  Year |
| Sat 01 | |
| Sun 02 | |
| Mon 03 | |
| Tue 04 | |
| Wed 05 | |
| Thur 06 | |
| Fri 07 | |
| Sat 08 | |
| Sun 09 | |
| Mon 10 | |
| Thur 13 | |
| Fri 14 | |

Affidavit A
Page 100 of 206

**Privacy Act Statement:** Your information will be used to administer leave. Collection is authorized by 39 USC 401, 404, 1001, 1003, and 1005; and 29 USC 2601 et seq. Providing the information is voluntary, but if not provided, we may not process your request. Your information may be disclosed as follows: to another government agency for law enforcement when the USPS or requesting agency becomes aware of a violation of law; to a congressional office at your request; to entities under contract with USPS and/or authorized to perform audits, to labor organizations as required by law; to government agencies regarding personnel matters; to the EEOC; and to the MSPB or Office of Special Counsel. For more information regarding our privacy policies visit www.usps.com/privacypolicy.

PS Form 3971, October 2017 (Page 2 of 2) PSN 7530-02-000-9136

00198

EXH A-1

**UNITED STATES POSTAL SERVICE ®**

**Request for or Notification of Absence**

| Employee's Name (Print last, first, MI) | Employee ID | Date Submitted (MM/DD/YYYY) | No. of Hours Requested |
|---|---|---|---|
| MANNING, GIDENESTHER F. | 02690872 | 3/30/2018 | ~~86~~ 79.50 |

| Installation (For postal leave, show city, state, and ZIP Code) | N/S Day | Pay Loc. No / D/A Code | From-Date | Hour |
|---|---|---|---|---|
| TWENTY SECOND ST 60616 | | 016 | 3/30/18 | 11:30 |

| Time of Call or Request | Scheduled Reporting Time | If Needed, Employee Can Be Reached At: | Thru-Date | Hour |
|---|---|---|---|---|
| IN PERSON | 6:00 AM | ☐ Do not call | 4/1/18 | 3:00 PM |

| Type of Absence | Documentation (For official use only) | Revised Schedule for (Date) | Approved In Advance ☐ Yes ☐ No |
|---|---|---|---|
| ☐ Annual | ☐ FMLA Requested (Certification review – HRSSC) | | |
| ☐ Holiday/AL Lv Exch | ☐ For COP Leave (CA1 on file) | Begin Work | |
| ☐ Carrier 701 Rule | ☐ For Advanced Sick Leave (PS 1221 on file) | | |
| ☒ LWOP (See reverse) | ☐ For Military Leave (Orders reviewed) | Lunch Out | Lunch In |
| ☐ Sick (See reverse) | ☐ For Court Leave (Summons reviewed) | | |
| ☐ Late | ☐ For Higher Level (PS 1723 on file) | End Work | |
| ☐ COP (See reverse) | ☐ Scheme Training Testing Qualifying (Memo on file) | | |
| ☐ Other | | Total Hours | |

**Remarks** (Do not enter medical information. See Privacy Act Statement on reverse of this form.)

I AM INSTRUCTED TO LEAVE WORK AND THAT I CAN NOT RETURN UNTIL I HAVE BEEN APPROVED FOR LIGHT DUTY.

| Employee's Signature and Date  3/30/18 | Signature of Person Recording Absence and Date | Signature of Supervisor and Date Notified |
|---|---|---|
| Gidenesther. Manning | | |

**Official Action on Application** (Return copy of signed request to employee.)

| ☒ Approved | Do not check an FMLA box until you verify the FMLA designation. | Signature of Supervisor and Date |
|---|---|---|
| ☐ Disapproved (Give reason below) | ☐ FMLA Designation is PENDING | J. Bates 3/30/18 |
| employee is NOT limited duty employee does not have an | ☐ FMLA Protected | |
| upon LD light duty case informed employee to submit light duty request | ☐ Not FMLA Protected | ☐ Continued on reverse |

PS Form 3971, December 2011 (Page 1 of 2) PSN 7530-02-000-9136

**Warning:** The furnishing of false information on this form may result in a fine of not more than $10,000 or imprisonment of not more than 5 years, or both (18 U.S.C. 1001).

Schedule columns (right side):

| | SP | PP | Year |
|---|---|---|---|
| Sat 01 | | | |
| Sun 02 | | | |
| Mon 03 | | | |
| Tue 04 | | | |
| Wed 05 | | | |
| Thur 06 | | | |
| Fri 07 | | | |
| Sat 08 | | | |
| Sun 09 | | | |
| Mon 10 | | | |
| Tue 11 | | | |
| Wed 12 | | | |
| Thur 13 | | | |
| Fri 14 | | | |

CASE No. 21 CV 1440

MAR 30 11.52

EXH A-2

 **UNITED STATES POSTAL SERVICE**

CASE No. 21 CV 1440

March 6, 2019

**SUBJECT:** **Five-Day Absence Notice**

Gwenesther Manning
19214 Lange Street
Lansing, IL 60438

EIN: 02690872
Job title: Clerk/SSDA
Pay Location: 016

According to our records, you have been absent from duty for more than five days.

In accordance with the Employee and Labor Relations Manual (ELM) Section 513.362, you are required to submit medical documentation or other acceptable evidence of incapacity to work or of need to care for a family member. I have not received any such documentation from you. **Therefore, you are being given five days from receipt of this letter to submit acceptable documentation for your absence. If you fail to submit acceptable documentation, your absences will be considered AWOL. An original copy of the documentation must be provided and it has to be mailed or presented in person. No e-mail copies will be accepted.**

In accordance with ELM 513.364, acceptable medical documentation should be furnished by your attending physician or other attending practitioner who is performing within the scope of his or her practice. The documentation should provide an explanation of your illness or injury, sufficient to indicate to management that you were unable to perform your normal duties for the period of absence. Medical statements such as "under my care" or "received treatment" are not acceptable evidence of incapacitation to perform duties.

In accordance with ELM Chapter 865, employees returning to duty after an absence due to illness or serious injury may require return-to-work clearance. Please see the attached copy of ELM Chapter 865 for more information.

You are reminded that all employees are expected to maintain their assigned schedules and must make every effort to avoid absences. Employees are required to be regular in attendance. Failure to document your absences and continued AWOL could result in disciplinary action up to and including removal.

Sincerely,

Ms. Tiffany Bates
Manager, Customer Services
Twenty-Second Street Station
312-225-0218

Rec 3/8/2019 dM

Attachments:
ELM Chapter 865 This notice was sent by First Class and Priority USPS Tracking 9114999944238066165662 on March 6, 2019

EXH B-1

 **UNITED STATES**
**POSTAL SERVICE**

March 6, 2019

**SUBJECT: Investigative Interview**

Gwensther Manning
19214 Lange Street
Lansing, IL 60438

EIN: 02690872
Job title: Clerk/SSDA
Pay Location: 016

This is official notification that you are required to report to Twenty-Second Street Post Office, 2035 S. State St. Chicago Illinois 60616 on Thursday, March 14, 2019, at 10:00 am for an investigative interview relative to your present absence from work. This is your opportunity to explain your extended absence from work and why corrective action should not be taken against you.

If you wish to have a USPS representative present during this interview, you may contact me and I will make arrangements for a USPS representative to be present.

If, for any reason, you are unable to report for this interview, you are required to contact me no later than the day prior to the scheduled interview to make other arrangements. Failure to report as scheduled or contacting me to make other arrangements may result in corrective action, up to and including removal, for failure to follow instructions. Furthermore, you will forfeit your opportunity to respond to the charges against you, leaving me no other alternative than to render my decision regarding possible corrective action based on the evidence of record.

You may contact me or one of my supervisors at 312-225-0218

*Ms Tiffany Bates*

Ms. Tiffany Bates
Manager, Customer Service
Twenty-Second Street Station

Attachments:
ELM Chapter 865 This notice was sent by First Class and Priority USPS Tracking 9114999944238066165662 on March 6, 2019

REC 3/8/2019 BM

ExH B-2



**UNITED STATES**
**POSTAL SERVICE**

March 13, 2019

**SUBJECT: Investigative Interview**

Gwensther Manning                    EIN: 02690872
19214 Lange Street                    Job title: Clerk/SSDA
Lansing, IL 60438                     Pay Location: 016

Per your request your Investigative Interview has been rescheduled for Friday March 22, 2019.

This is official notification that you are required to report to Twenty-Second Street Post Office, 2035 S. State St. Chicago Illinois 60616 on Friday March 22, 2019, at 12:00 noon for an investigative interview relative to your present absence from work. This is your opportunity to explain your extended absence from work and why corrective action should not be taken against you.

If you wish to have a USPS representative present during this interview, you may contact me and I will make arrangements for a USPS representative to be present.

If, for any reason, you are unable to report for this interview, you are required to contact me no later than the day prior to the scheduled interview to make other arrangements. Failure to report as scheduled or contacting me to make other arrangements may result in corrective action, up to and including removal, for failure to follow instructions. Furthermore, you will forfeit your opportunity to respond to the charges against you, leaving me no other alternative than to render my decision regarding possible corrective action based on the evidence of record.

You may contact me or one of my supervisors at 312-225-0218

Ms. Tiffany Bates
Manager, Customer Service
Twenty-Second Street Station

Attachments:
ELM Chapter 865 This notice was sent by First Class and Priority USPS Tracking 9114 9999 4423 8066 1656 55 on March 13, 2019

USPS TRACKING #    **9114 9999 4423 8066 1656 55**
& CUSTOMER         For Tracking or inquiries go to USPS.com
RECEIPT            or call 1-800-222-1811.

Exit B 3

 **UNITED STATES**
**POSTAL SERVICE**

March 27, 2019

**SUBJECT: Notice of Investigative Interview**

Gwensther Manning                          EIN: 02690872
19214 Lange Street                          Job title: Clerk/SSDA
Lansing, IL 60438                           Pay Location: 016

This is official notification that you are required to report to Twenty-Second Street Post Office, 2035 S. State St. Chicago Illinois 60616 on Friday April 5th, 2019, at 12:00 noon for an investigative interview relative to your present absence from work. This is your opportunity to explain your extended absence from work and why corrective action should not be taken against you.

If you wish to have a USPS representative present during this interview, you may contact me and I will make arrangements for a USPS representative to be present.

If, for any reason, you are unable to report for this interview, you are required to contact me no later than the day prior to the scheduled interview to make other arrangements. Failure to report as scheduled or contacting me to make other arrangements may result in corrective action, up to and including removal, for failure to follow instructions. Furthermore, you will forfeit your opportunity to respond to the charges against you, leaving me no other alternative than to render my decision regarding possible corrective action based on the evidence of record.

You may contact me or one of my supervisors at 312-225-0218

Ms. Tiffany Bates
Manager, Customer Service
Twenty-Second Street Station

Attachments:
ELM Chapter 865 This notice was sent by First Class and Priority USPS Tracking
**9114 9012 3080 1288 0070 71** on March 27, 2019

Ex# B-4


**UNITED STATES**
**POSTAL SERVICE**

March 27, 2019

**SUBJECT: Notice of Investigative Interview**

Gwensther Manning                                    EIN: 02690872
19214 Lange Street                                   Job title: Clerk/SSDA
Lansing, IL 60438                                    Pay Location: 016

This is official notification that you are required to report to Twenty-Second Street Post Office, 2035 S. State St. Chicago Illinois 60616 on Friday April 5th, 2019, at 12:00 noon for an investigative interview relative to your present absence from work. This is your opportunity to explain your extended absence from work and why corrective action should not be taken against you.

If you wish to have a USPS representative present during this interview, you may contact me and I will make arrangements for a USPS representative to be present.

If, for any reason, you are unable to report for this interview, you are required to contact me no later than the day prior to the scheduled interview to make other arrangements. Failure to report as scheduled or contacting me to make other arrangements may result in corrective action, up to and including removal, for failure to follow instructions. Furthermore, you will forfeit your opportunity to respond to the charges against you, leaving me no other alternative than to render my decision regarding possible corrective action based on the evidence of record.

You may contact me or one of my supervisors at 312-225-0218

Ms. Tiffany Bates
Manager, Customer Service
Twenty-Second Street Station

Attachments:
ELM Chapter 865 This notice was sent by First Class and Priority USPS Tracking
**9114 9012 3080 1288 0070 71** on March 27, 2019

ExH B-5

CASE NO. 21 CV 1440

## UNITED STATES POSTAL SERVICE
## EQUAL EMPLOYMENT OPPORTUNITY CASE
## IN THE MATTER OF:

3: 59

Gwenesther F. Manning
Complainant

Agency Case No.    4J-606-0034-18
U.S. DISTRICT COURT

v.

Megan J. Brennan,
Postmaster General,
c/o Great Lakes Area
Respondent.

Formal Filed:    February 24, 2018

## FINAL AGENCY DECISION

### Introduction

Pursuant to Equal Employment Opportunity Commission (EEOC) regulations at 29 C.F.R. §1614.110, this is the final agency decision of the U.S. Postal Service regarding the complaint of discrimination identified above.

### Statement of Claim

The complainant alleged discrimination based on Disability (To be Specified)[1] and Retaliation[2] (Prior EEO Activity) when: 1) On November 27, 2017, she did not believe she was paid for working; 2) On December 15, 2017, she was not accommodated when she was told she could not sit down at the retail counter[3]; 3) On January 5, 2018, she was not accommodated when she was forced to sign a modified job offer that possibly violated her restrictions; and 4) Since January 9, 2018, and continuing, she was not accommodated when she was told to perform work that violated her restrictions or go home. (Report of Investigation [ROI], Claims to be Investigated, pp. 9-12).

On April 9, 2018, the complainant's complaint was amended to include the following issues: 5) On dates to be specified between February 23 and March 3, 2018, she was not accommodated when she was only permitted to work about one hour daily[4]; 6) On February 27, 2018, her starting time was changed; 7) On March 3, 2018, the manager

---

[1] The complainant testified that her main medical conditions are lumbar radiculopathy and disc degenerative disease. (ROI, Aff. A, p. 2).

[2] The complainant added the purview of retaliation in her affidavit. The complainant testified that her medical condition was not a factor in claims 1 and 7 nor was her prior EEO activity a factor in claim 7. Therefore, claims 1 and 7 will not be addressed under disability or claim 7 under reprisal. (ROI, Affidavit [Aff.] A, pp. 7, 24-25, 28-29).

[3] The complainant clarified that she the issue was not an accommodation issue, it was a disparity of treatment issue when she was told not to sit down while other clerks were not. (ROI Aff. A, p. 8).

[4] The complainant testified that she worked 1 hour on February 24, 26, and 27, and March 1-3 and 29, 2018. (ROI, Aff. A. p

Rec 11/1/18

Final Agency Decision
Gwenesther F. Manning
Agency Case Number 4J-606-0034-18
Page 2

said she would speak to her about resuming her regular schedule, but she never did; 8) On or around March 30, 2018, she was not accommodated when she was told she would only be permitted to work one hour daily; and 9) On March 31, 2018, she was not accommodated when she was told that she could not work until her light duty request was approved[5]. (ROI, Claims to be Investigated, pp. 3-6).

## Chronology

This complaint was processed in accordance with the applicable Equal Employment Opportunity Commission (EEOC) regulations, 29 C.F.R. §1614.103 *et seq.* An investigation was conducted, and a copy of the investigative report was transmitted to the complainant on August 8, 2018. Following the receipt of that report, the complainant had 30 days within which to request a hearing before an EEOC Administrative Judge (AJ) or a final agency decision without a hearing.

As the complainant failed to request either a hearing or a final agency decision without a hearing, this decision is being issued in accordance with 29 C.F.R. §1614.110(b).

## Applicable Law

### Disparate Treatment

The United States Supreme Court established a burden-shifting framework for analyzing claims of discrimination in McDonnell Douglas Corporation v. Green, 411 U.S. 792 (1973), and subsequently refined that analysis in Texas Department of Community Affairs v. Burdine, 450 U.S. 248 (1981). The McDonnell Douglas and Burdine approach involves a three-step process when a complainant alleges intentional discrimination based on a disparate treatment theory. The Equal Employment Opportunity Commission has adopted this approach in its decision making. Downing v. U.S. Postal Service, EEOC Appeal No. 01822326 (September 19, 1983); Jennings v. U.S. Postal Service, EEOC Appeal No. 01932793 (April 13, 1994); and Saenz v. Department of the Navy, EEOC Request No. 05950927 (January 9, 1998). A complainant alleging discrimination must first demonstrate that there is some substance to his or her claim. To satisfy this burden, the complainant must establish a *prima facie* case of discrimination for each of the bases of discrimination alleged by a preponderance of the evidence. Furnco Construction Company v. Waters, 438 U.S. 576 (1978).

Although a complainant may establish a *prima facie* case by presenting direct evidence of discrimination, the more frequent method of establishing a *prima facie* case is through circumstantial evidence by showing that he or she: (1) belongs to a protected group; (2) was subjected to an adverse employment action; and (3) was treated differently in this regard than similarly situated individuals who were not members of the protected group.

---

[5] The complainant clarified that issue 9 occurred on March 30, 2018. (ROI, Aff. A, p. 21).

Hill v. Department of Veterans Affairs, EEOC Appeal No. 0120063979 (November 28, 2007); Mayberry v. Vought Aircraft Company, 55 F.3d 1086, 1090 (5th Cir. 1995); Mitchell v. Toledo Hospital, 964 F.2d 577, 582-83 (6th Cir. 1992). The failure to establish a specific element of a *prima facie* case may be overcome by presenting evidence of agency actions from which an inference of discrimination could be drawn if they remained unexplained. Day v. U.S. Postal Service, EEOC Appeal No. 01996097 (September 18, 2000).

Once a *prima facie* case has been established, the burden of production shifts to the employer to articulate a legitimate, non-discriminatory reason for its action. Furnco, 438 U.S. at 578. *See also* St. Mary's Honor Center v. Hicks, 509 U.S. 502, 506 (1993). The employer need not persuade the trier of fact that the proffered reason was its actual motivation but merely needs to raise a genuine issue of fact as to whether it discriminated against the complainant. Burdine, 450 U.S. at 254; Keval v. Commodity Futures Trading Commission, EEOC Appeal No. 01832127 (November 2, 1984); Hollis v. Department of Veterans' Affairs, EEOC Appeal No. 01934600 (May 3, 1994). If the agency offers no adequate explanation for the discrepancy in treatment between the complainant and similarly situated employees, the agency does not carry its burden of production and the complainant prevails on the basis of the inference of discrimination created by the *prima facie* case. Frady v. U.S. Postal Service, EEOC Appeal No. 01A05317 (January 10, 2003); Houston v. Department of Veterans' Affairs, EEOC Appeal No. 01976054 (August 27, 1999); and Parker v. U.S. Postal Service, EEOC Request No. 05900110 (April 30, 1990).

If the employer meets this burden, any presumption of discrimination created by the *prima facie* case disappears; it simply "drops from the case." Hicks, 509 U.S. at 507; U.S. Postal Service Board of Governors v. Aikens, 460 U.S. 711, 715 (1983). *See also* Hernandez v. Department of Transportation, EEOC Request No. 05900159 (June 28, 1990) and Peterson v. Department of Health and Human Services, EEOC Request No. 05900467 (June 8, 1990). The complainant can then prevail only if he or she proves that the employer's reasons are not only pretext but are pretext for discrimination. Hicks, 509 U.S. at 507 and 516; Nichols v. Grocer, 138 F.3d 563, 566 (5th Cir. 1998); Swanson v. General Services Administration, 110 F.3d 1180, 1185 (5th Cir. 1997). *See also* Papas v. U.S. Postal Service, EEOC Appeal No. 01923753 (March 17, 1994) and Bradford v. Department of Defense, EEOC Appeal No. 01940712 (September 20, 1994). Thus, the complainant cannot create a factual issue of pretext based merely on personal speculation that there was discriminatory intent. Southard v. Texas Board of Criminal Justice, 114 F.3d 539, 555 (5th Cir. 1997); Lyles v. U.S. Postal Service, EEOC Appeal No. 01A11110 (May 22, 2002); and Nathan v. U.S. Postal Service, EEOC Appeal No. 01995788 (August 29, 2001).

Pretext involves more than a mistake. It means that the reason offered by management is factually baseless, is not the actual motivation for the action, or is insufficient to motivate the action. Tincher v. Wal-Mart Stores, Inc., 118 F.3d 1125, 1130 (7th Cir. 1997) and Morgan v. Hilti, Inc., 108 F.3d 1319, 1323 (10th Cir. 1997). The complainant always

Final Agency Decision
Gwenesther F. Manning
Agency Case Number 4J-606-0034-18
Page 4

carries the "ultimate burden of persuading the trier of fact that he has been the victim of intentional discrimination." Burdine, 450 U.S. at 254 and Hicks, 509 U.S. at 511.

The ultimate burden of persuasion remains with the complainant. Board of Trustees of Keene College v. Sweeney, 439 U.S. 24, 25 N.2 (1978). This burden was reaffirmed and clarified in St. Mary's Honor Center v. Hicks, supra., where the Court held that in order to impose liability upon an employer for discriminatory employment practices, an ultimate finding of unlawful discrimination is required whether or not the employer's explanation for its action was believable. See also Brewer v. U.S. Postal Service, EEOC Appeal No. 01941786 (June 21, 1994) and Montoya v. Department of Housing and Urban Development, EEOC Appeal No. 01940999 (August 4, 1994).

## Person with a Disability

Discrimination based on disability and the failure to accommodate a qualified individual with a disability in connection with federal employment are prohibited by the Rehabilitation Act of 1973 (29 U.S.C. §791). The Rehabilitation Act Amendments of 1992 (P.L. 102-569, October 29, 1992) added a new Subsection (g) to 29 U.S.C. §791 making it clear that the same standards which apply to claims under the Americans With Disabilities Act are to be applied to Rehabilitation Act claims. On January 1, 2009, the ADA Amendments Act of 2008 (P.L. 110-325, September 25, 2008) became law, addressing what Congress viewed as unduly restrictive interpretations of the ADA by the courts and administrative bodies. Following its passage, courts have consistently held that the ADA Amendments Act should not be applied retroactively. See EEOC v. Agro Distribution, LLC, 555 F. 3d 462 (5th Cir. 2009) and Lytes v. D.C. Water and Sewer Authority, 572 F. 3d 936 (D.C. Cir. 2009). The EEOC promulgated regulations implementing the ADA Amendments Act on March 25, 2011.

In order to assert a claim of disability discrimination, a complainant must satisfy the threshold requirement that he or she is a "person with a disability" as that term is defined in the applicable statutes and Equal Employment Opportunity Commission regulations. Title 42, United States Code, Section 12102(1) and 29 C.F.R. §1630.2(g)(1) define a person with a disability as an individual who: (i) has a physical or mental impairment which substantially limits one or more of that person's major life activities (referred to elsewhere in the regulations as "actual disability"); (ii) has a record of such an impairment; or (iii) is regarded as having such an impairment. See also Melahn v. Department of the Navy, EEOC Appeal No. 01832380 (October 21, 1985). Whether an individual has a disability is not based on the name or diagnosis of the impairment involved but rather the effect which that impairment has on the individual.

## Person with a Disability – Actual Disability

The definition of what constitutes a "physical or mental impairment" remains very broad. See 29 C.F.R. §1630(h)(1) and (2). According to the Americans With Disabilities Act (ADA), the Americans With Disabilities Act Amendments (ADAAA), and EEOC

regulations, major life activities include, but are not limited to, caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working. *See* 42 U.S.C. §12102(2)(A) and 29 C.F.R. §1630.2(h)(2)(i)(1)(i). They also include standing, lifting, bending, reading, concentrating, thinking, communicating, and eating. The ADAAA also included within the definition of major life activity a category of major bodily functions which include functions of the immune system and normal cell growth, and respiratory, circulatory, endocrine, reproductive, digestive, neurological, brain, bowel, and bladder functions. 42 U.S.C. §12102(2)(B) and 29 C.F.R. §1630.2(h)(2)(i)1)(ii).

The ADAAA made it clear that Congress believed that the courts and the Equal Employment Opportunity Commission had been too narrow in their interpretations of the term "substantially limits" and instructed them to apply that term "...consistently with the findings and purposes of the ADA Amendments Act of 2008" and to construe the Act in favor of "broad coverage." *See* 42 U.S.C. §12101(a)(1) and (b)(1). The Act and its implementing regulations create nine "Rules of Construction" to be applied to determine whether or not an impairment is substantially limiting. 42 U.S.C. §12102(4) and 29 C.F.R. §1630.2(j)(1). Besides calling for broad and consistent coverage and an "individualized assessment", the rules provide that an impairment is disabling if it substantially limits an individual's ability to perform a major life activity in comparison to "most people in the general population." In making this comparison, the regulations call for consideration of the difficulty, effort, or time required by the individual to perform the major life activity; the length of time the activity can be performed; the way in which the major life activity is affected by the impairment involved; and the non-ameliorative effects of mitigating measures such as the side effects of medication. *See* 29 C.F.R. §1630.2(j)(4). This regulation also makes clear that the focus should be on the effort required not the outcome that can be achieved by the individual with the impairment.

In addition, an impairment need only affect one major life activity to be substantially limiting; an impairment need not "significantly restrict" in order to be substantially limiting; and a determination concerning the application of the term should not require "extensive analysis" and not usually require scientific, medical, or statistical analysis. The rules also state that episodic impairments or those in remission can be substantially limiting if they would be so when they are active and that even conditions which have less than a six-month duration could be substantially limiting. Significantly, the Commission states in its regulations that the application of these three rules of construction to certain medical conditions will "... in virtually all cases, result in a determination of coverage..." when assessing a possible "actual disability" (as distinguished from a "regarded as" disabled) situation. *See* 29 C.F.R. §1630.2(j)(3), Predictable Assessments.

The ADAAA eliminated consideration of the ameliorative effects of mitigating measures when determining whether or not an impairment is substantially limiting except for consideration of ordinary eyeglasses or contact lenses intended to correct visual acuity or eliminate refractive error. Mitigating measures include medication; medical supplies, equipment, or appliances; assistive technologies; low vision devices; hearing aids and

implants; mobility devices; oxygen therapy equipment and supplies; prosthetics; and "reasonable accommodations or auxiliary aids or services", *e.g.* interpreters or readers or the modification of equipment. *See* 42 U.S.C. §12104(4)(E) and §12103 and 29 C.F.R. §1630.2(j)(5) and (6).

A generalized assertion, without specific evidence to support it, that an individual is substantially limited is not sufficient to satisfy a complainant's burden of proof. Lohr v. U.S. Postal Service, EEOC Request No. 05930799 (May 19, 1994); Zeigler v. U.S. Postal Service, EEOC Appeal No. 01930854 (May 12, 1994) and Jenkins v. U.S. Postal Service, EEOC Appeal No. 01954572 (March 24, 1997). It is also not enough that the agency is in possession of a diagnosis; that an individual's supervisor knows that they have a particular condition; that the complainant has an approved claim with the Office of Workers Compensation Programs; or that the complainant has a percentage disability awarded by the Department of Veterans Affairs. Black v. U.S. Postal Service, EEOC Request No. 05930748 (May 12, 1994); Pascale v. Department of the Navy, EEOC Petition No. 03850092 (March 5, 1986); Schnabele v. U.S. Postal Service, EEOC Appeal No. 01982634 (July 13, 2001); and Bono v. U.S. Postal Service, EEOC Appeal No. 01951113 (August 11, 1997).

## Person With a Disability – Record Of

EEOC's regulations provide that an individual may establish that he or she is a "person with a disability" by showing that he or she has a history of, or has been misclassified as having, a physical or mental impairment which substantially limits one or more major life activities compared to most people in the general population. *See* 42 U.S.C. §12102(1)(B) and 29 C.F.R. §1630.2(k). The Commission notes that consideration of whether or not the past condition/impairment was substantially limiting is required and that reasonable accommodation may be involved in a "record of" case; *e.g.* follow up medical care for the formerly limiting condition.

## Person With a Disability – Regarded As

An individual can establish that he or she is a person with a disability by showing that he or she was subjected to a prohibited action because of an actual or perceived physical or mental impairment, whether or not it substantially limits or is perceived to substantially limit, a major life activity. 42 U.S.C. §12102(1)(C); §12102(3); and 29 C.F.R. §1630.2(l). *See also* 29 C.F.R. §1630.2(j)(2). However, "transitory and minor" impairments are excluded, with "transitory" defined as involving an actual or expected duration of six months or less. 42 U.S.C. §12102(3)(B). Both aspects must be established by objective evidence in order to assert this defense. 29 C.F.R. §1630.15(f). The regulations also state that establishing that an employer took an action because of an actual or perceived physical or mental impairment does not establish that the employer is liable for disability discrimination (29 C.F.R. §1630.2(l)(3). Finally, if a claim is presented as a "regarded as" claim, there is no consideration of reasonable accommodation. 29 C.F.R. §1630.2(o)(4) and §1630.9(e). Title 29 C.F.R. §1630.2(g)(3) indicates that where an individual is not

challenging an employer's failure to provide a reasonable accommodation and does not require a reasonable accommodation, it is generally unnecessary to proceed under the "actual disability" or "record of" prongs, which require a showing of an impairment that substantially limits a major life activity or a record of such an impairment, and that the evaluation of coverage can be made solely under the "regarded as" prong of the definition of disability.

## Disability – Accommodation

Assuming that a complainant has established that he or she is a person with a disability, the next element of a *prima facie* case based on a failure to accommodate is to establish that he or she is "a qualified individual." 42 U.S.C. §12111(8). The regulations define a "qualified individual" as a person who satisfies the requisite skill, experience, educational, and other job-related requirements of the position the individual holds or desires and who, with or without reasonable accommodation, can perform the essential functions of that position without endangering the health and safety of the individual or others. 29 C.F.R. §1630.2(m).

The essential functions of a position are the fundamental job duties of the position the complainant holds or desires considering whether the position exists to perform the function, whether there are a limited number of individuals available to perform the function, or whether the function is highly specialized and the incumbent was hired for his or her expertise. 29 C.F.R. §1630.2(n). The complainant has the burden of proving that he or she is a "qualified individual." Jasany v. Postmaster General, 755 F.2d 1244 (6th Cir. 1985). The complainant must also show that the agency was aware of the allegedly disabling condition and that a plausible accommodation can be made. Mikovich v. U.S. Postal Service, EEOC Appeal No. 01A11150 (June 20, 2002) and Lincovich v. U.S. Postal Service, EEOC Appeal No. 01810610 (August 9, 1982).

If it is determined that the complainant is unable to perform the essential functions of his or her position, the next inquiry is whether there is any reasonable accommodation by the employer which would enable him or her to perform those functions without constituting an undue hardship. The Commission's regulations provide examples of possible forms of accommodation and note that absent undue hardship, an employer is required to provide a reasonable accommodation to an otherwise qualified individual who is actually disabled (29 C.F.R. §1630.2(g)(i)(1)(i)) or has a "record of" a disability (29 C.F.R. §1630.2(g)(i)(1)(ii)); 29 C.F.R. 1630.2(o) and 1630.9(e)). See also White v. York International Corporation, 45 F.3d 357, 361-362 (10th Cir. 1995). The factors to be considered in determining whether an undue hardship exists are set out in the statute and regulations and include the nature and cost of the accommodation; the financial and other resources of the facility or the employer; and the type of operations in which the employer engages. 42 U.S.C. §12111(10) and 29 C.F.R. §1630.2(p).

An employer is not required to provide an accommodation which does not assist the complainant in performing the essential functions of his or her position. Conley v. U.S.

<u>Postal Service</u>, EEOC Appeal No. 01984624 (July 6, 2001). The employer must be able to accommodate the individual without undue hardship. <u>Brown v. Secretary of the Interior</u>, EEOC Petition No. 03A00004 (May 22, 2002) and <u>Hoang v. U.S. Postal Service</u>, EEOC Appeal No. 01923725 (March 30, 1993). The employer is not required to accommodate an individual by eliminating the essential functions of his or her job or by creating a job not already existing within the organization, including a light duty position. <u>Turco v. Hoechst Celanese Corporation</u>, 101 F.3d 1090, 1093-1094 (5th Cir. 1996); <u>Shiring v. Postmaster General</u>, 90 F.3d 827, 831-832 (3rd Cir. 1996); and <u>Watson v. Lithonia Lighting and National Service Industries, Inc.</u>, 304 F.3d 749 (7th Cir. 2002), *cert. denied* 123 S. Ct. 1286 (2003).

The Rehabilitation Act does not require an employer to lower or substantially modify standards to accommodate an individual or to take an action inconsistent with the contractual rights of others under a collective bargaining agreement. <u>Jasany</u>, 755 F.2d at 1250-1251; <u>Foreman v. Babcock & Wilcox Company</u>, 117 F.3d 800, 810 (5th Cir. 1997); <u>Williams v. Widnall</u>, 79 F.3d 1003 (10th Cir. 1996); and <u>Hufford-Smith v. Department of Justice</u>, EEOC Appeal No. 01995040 (February 13, 2002). In addition, a disabled worker is not entitled to the reasonable accommodation which he or she prefers and must show a connection between the disabling condition and the requested accommodation. <u>Gile v. United Airlines, Inc.</u>, 95 F.3d 492, 498 (7th Cir. 1996); <u>Wiggins v. U.S. Postal Service</u>, EEOC Appeal No. 01953715 (April 22, 1997); and <u>Metzenbaum v. Office of Personnel Management</u>, EEOC Appeal No. 01986974 (April 4, 2002).

An employer may accommodate an individual through reassignment. However, the employer does not have to accommodate him or her by promoting him to a higher level position or bumping another employee out of a job to create a vacancy. <u>Shiring</u>, 90 F.3d at 832 where the court held that the employee would have to establish that "...there were vacant, funded positions whose essential duties [the employee] was capable of performing, with or without reasonable accommodation, and that those positions were at an equivalent level or position [as the position the employee previously held]." Therefore, for the accommodation of reassignment to be reasonable, a position must exist within the organization and be vacant, the employee must be "otherwise qualified" to meet the criteria for this position, and the reassignment must not offend the contract rights of others under the applicable collective bargaining agreement. <u>Foreman</u>, 117 F.3d at 810.

## <u>Disability – Disparate Treatment</u>

Courts have adopted and applied the Title VII burdens of proof to disability discrimination claims. *See*, for example, <u>Norcross v. Sneed</u>, 755 F.2d 113 (8th Cir. 1985) and <u>Prewitt v. Postmaster General</u>, 662 F.2d 292 (5th Cir. 1981). The Commission has also analyzed cases under this theory. <u>Greathouse v. Department of the Army</u>, EEOC Appeal No. 01984880 (May 2, 2001) and <u>Oberg v. Secretary of the Navy</u>, EEOC Request No. 05890451 (July 20, 1989).

In analyzing a disparate treatment claim under the Rehabilitation Act, the burden-shifting method of proof set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973) applies. See Heyman v. Queens Village Committee for Mental Health for Jamaica Community Adolescent Program, 198 F.3d 68 (2nd Cir. 1999) and Swanks v. WMATA, 179 F.3d 929, 933-34 (D.C. Cir. 1999). Under this analysis, in order to establish a *prima facie* case, a complainant must demonstrate that he or she: (1) is an "individual with a disability"; (2) is "qualified" for the position held or desired; (3) was subjected to an adverse employment action; and (4) the circumstances surrounding the adverse action give rise to an inference of discrimination. Lawson v. CSX Transportation, Inc., 245 F.3d 916 (7th Cir. 2001).

## Similarly Situated Employees

One of the key elements of a *prima facie* case of disparate treatment based on an adverse employment action is proof that similarly situated comparison employees not in the complainant's protected group were treated more favorably. This is so, in part, because agencies are not monolithic entities. Turner v. Department of the Navy, EEOC Request No. 05900445 (September 25, 1990). In general, in the absence of direct evidence of discrimination, if the complainant cannot identify any similarly situated comparison employees who were treated more favorably, he or she will not prevail. Aguilar v. U.S. Postal Service, EEOC Appeal No. 01944167 (August 8, 1995).

In order for two or more employees to be considered similarly situated for the purpose of creating an inference of disparate treatment, a complainant must show that all of the relevant aspects of his or her employment situation are virtually identical to those of the other employees who he or she alleges were treated more favorably. Smith v. Monsanto Chemical Company, 770 F.2d 719, 723 (8th Cir. 1985); Murray v. Thistledown Racing Club, Inc., 770 F.2d 63, 68 (6th Cir. 1985); Nix v. WLCY Radio/Rahall Communications, 738 F.2d 1181, 1185 (11th Cir. 1984); Mazzella v. RCA Global Communications, Inc., 642 F.Supp. 1531, 1547 (S.D. N.Y. 1986), aff'd. 814 F.2d 653 (2nd Cir. 1987). The Equal Employment Opportunity Commission has on numerous occasions ruled in similar fashion. See, for example, Tolar v. U.S. Postal Service, EEOC Appeal No. 01965083 (December 16, 1998), citing O'Neal v. U.S. Postal Service, EEOC Request No. 05910490 (July 23, 1991); and Knapp-Huffman v. Department of Justice (Bureau of Prisons), EEOC Appeal No. 01991026 (January 16, 2002).

If employees have different supervisors, perform different job functions, were subject to different job standards, engaged in different conduct, or worked during different time periods, they are not similarly situated. O'Neal, *id.*; Allen v. Department of the Navy, EEOC Request No. 05900539 (June 15, 1990); Willis v. Department of the Treasury, EEOC Appeal No. 01A51459 (March 16, 2003); and Stewart v. Department of Defense, EEOC Appeal No. 01A02890 (June 27, 2001).

For employees to be considered similarly situated, their medical and physical restrictions must be the same as the complainant's. Curtin v. U.S. Postal Service, EEOC Appeal No.

Final Agency Decision
Gwenesther F. Manning
Agency Case Number 4J-606-0034-18
Page 10

01891910 (March 27, 1990); Briand v. U.S. Postal Service, EEOC Appeal No. 01932677 (February 2, 1994); Woody v. TVA, EEOC Appeal No. 0120063987 (December 17, 2007).

Retaliation

To establish a *prima facie* case based on reprisal, a complainant must show that: (1) he or she engaged in prior protected activity; (2) the agency official who took the adverse employment action was aware of the protected activity; (3) he or she was subsequently disadvantaged by an adverse employment action or adverse treatment; and (4) there is a causal link between the protected activity and adverse action/treatment. Hochstadt v. Worcester Foundation for Experimental Biology, Inc., 425 F. Supp. 318, 324 (D. Mass 1976), *aff'd* 545 F.2d 222 (1st Cir. 1976); Manoharan v. Columbia University College of Physicians and Surgeons, 842 F.2d 590, 593 (2nd Cir. 1988); Coffman v. Department of Veterans' Affairs, EEOC Request No. 05960437 (November 20, 1997); and Whitmire v. Department of the Air Force, EEOC Appeal No. 01A00340 (September 25, 2000). A complainant may establish prior EEO activity by participating at any stage of the EEO process or opposing unlawful discriminatory conduct. See, generally, Lewis v. Department of the Navy, EEOC Appeal No. 01810158 (May 22, 1981) (counseling stage); Ballard v. U.S. Postal Service, EEOC Appeal No. 01923276 (August 17, 1992) (witness); and Burrough v. U.S. Postal Service, EEOC Appeal No. 01842417 (June 24, 1986) (representative).

A complainant may also establish a *prima facie* case by presenting evidence which, if it was not explained, would reasonably give rise to an inference of reprisal. Shapiro v. Social Security Administration, EEOC Request No. 05960403 (December 6, 1996). Obviously, the complainant must offer evidence that the agency officials who took the action were aware of his or her prior participation or opposition activity (Demeier v. Department of the Air Force, EEOC Appeal No. 01A11166 (May 23, 2002)) but establishing that alone will not enable a complainant to establish the causal connection element of a *prima facie* case. Garcia-Gannon v. Department of the Air Force, EEOC Appeal No. 01821195 (June 30, 1983). Adverse actions need not be ultimate employment actions, just adverse treatment based on a retaliatory motive, which could deter a reasonable person from engaging in protected activity. Burlington Northern Santa Fe Railway Company v. White, 548 U.S. 53 (2006); Lindsey v. U.S. Postal Service, EEOC Request No. 05980410 (November 4, 1999) and *EEOC Compliance Manual*, Section 8.D.3, Notice No. 915.003 (May 20, 1998).

The causal connection may be inferred by evidence that the protected conduct was closely followed by the adverse action. Clark County School District v. Breeden, 532 U.S. 286 (2001). The Court in Breeden noted that where a complainant is relying on temporal proximity to establish a causal connection between prior protected activity and a current adverse employment action, that proximity must be "very close" and cited with approval Circuit Court of Appeals decisions holding that time gaps of three to four months between an individual's prior EEO activity and the current adverse employment action were too attenuated to suggest an inference of retaliation. The Commission has followed suit and

rendered decisions establishing much shorter time frames to establish the requisite temporal proximity. See, for example, Heads v. U.S. Postal Service, EEOC Appeal No. 01A51547 (June 2, 2005); Archibald v. Department of Housing and Urban Development, EEOC Appeal No. 01A54280 (September 22, 2005); and Lynch v. U.S. Postal Service, EEOC Appeal No. 01A24705 (August 14, 2003).

## Background

At all times relevant to the issues in this complaint, the complainant was employed as a full times Sales, Services/Distribution Associate (SSDA) at the Twenty-Second Street Station in Chicago, IL. (ROI, Exhibit 1, p. 1). The complainant has alleged that Manager Customer Services Debra Williams-Brown, Supervisor Customer Services Genise Green, Supervisor Customer Services Talena Franks-Cummings, Manager Customer Services Tiffany Bates, and Manager Health & Resource Management Jessie Tucker intentionally discriminated against her because of her Disability (Lumbar radiculopathy/disc degenerative disease) and Retaliation (Prior EEO Activity) when: 1) On November 27, 2017, she did not believe she was paid for working; 2) On December 15, 2017, she was told she could not sit down at the retail counter; 3) On January 5, 2018, she was not accommodated when she was forced to sign a modified job offer that possibly violated her restrictions; 4) Since January 9, 2018, and continuing, she was not accommodated when she was told to perform work that violated her restrictions or go home; 5) On February 24, 26, and 27, and March 1-3 and 29, 2018, she was not accommodated when she was only permitted to work about one hour daily; 6) On February 27, 2018, her starting time was changed; 7) On March 3, 2018, the manager said she would speak to her about resuming her regular schedule, but she never did; 8) On or around March 30, 2018, she was not accommodated when she was told she would only be permitted to work one hour daily; and 9) On March 30, 2018, she was not accommodated when she was told that she could not work until her light duty request was approved.

The complainant identified her medical condition as lumbar radiculopathy and degenerative disc disease which were diagnosed in 2000 and permanent in nature. (ROI, Aff. A, p. 2). She claimed relevant management was aware of her conditions. The complainant explained she could not perform the heavy lifting that was required in moderation in her job description and was limited in the amount of time she could spend performing strenuous tasks such as working post mail without the proper equipment and was limited from prolonged standing. (ROI, Aff. A, pp. 2-3). She advised her doctor informed that she was not to perform duties that required pushing heavy equipment, bending, stooping or twisting, such was working post mail which required throwing packages at an average of 225-245 packages per hour. (ROI, Aff. A, p. 2). The complainant contended her daily duties consisted of working post mail for four to six hours which required standing and pushing heavy equipment which she could not perform for three to six hours per day without aggravating her back condition. (ROI, Aff. A, p. 3). She noted she previously worked the retail counter and was required to spread flats, work undeliverable bulk business mail (UBBM), and the retail counter. The complainant alleged she was able to perform the duties associated with the retail counter; however,

management stopped her from working the retail counter without any explanation and relegated her to working post mail, spreading flats, and assigned her the hardest duties. The complainant contended the sales, services associate (SSA) position she was initially assigned by the District Reasonable Accommodation Committee (DRAC) was supposed to be working the retail counter only; however, she was not placed into that position. (ROI, Aff. A, p. 3).

The complainant attested her work restrictions as February 23, 2017 were no lifting over 25 pounds, sitting eight hours, standing and walking intermittently eight hours, climbing and pushing/pulling one hour, driving six hours, no kneeling, bending, stooping, and twisting, no pushing over 50 pounds, and recommended sedentary position. (ROI, Aff A, p. 3). She claimed she was restricted from heavy lifting in her personal life and experienced numbness in her toes if she walked more than two and a half miles. The complainant explained she requested reasonable accommodation through the DRAC and her craft was changed from a carrier to a sales, services associate (SSA) on October 20, 2015; however, she was changed to a sales, services/distribution associate (SSDA) which required heavy lifting, and performing distribution duties, with exceeded her restrictions. She advised she did not regard the accommodation as effective because the Postal Service did a bait and switch with offering the SSA position but not giving her that assignment. (ROI, Aff. A, pp. 3-4).

The complainant testified her restrictions on January 4, 2018 were no lifting over 20 pounds, and sitting, standing, walking, and climbing six to eight hours intermittently. (ROI, Aff. A, p. 4). She alleged the modified job she was given on January 5, 2018 required her to stand for four hours continuously which violated her restrictions. The complainant claimed her restrictions changed per her request to prevent management from putting her off the clock. She averred she was put off the clock on March 30, 2018 and was currently off the clock due to her restrictions. The complainant asserted that the duties she was performing were not an accommodation because working post mail was strenuous manual labor that required twisting, bending, and stooping to retrieve and sort packages and also required continuous standing. She alleged that management manipulated the system by invoking other duties as required but were silent on the written job description. The complainant explained she did not request to appear before the DRAC again; however, she had sent several letters, dated November 16 and 30, 2017, and January 18, 2018, to the DRAC chairperson but had not received any response. (ROI, Aff. A, pp. 4-5).

Record evidence does not include a letter dated November 16, 2017.

Record evidence provides a letter dated November 29, 2017 from the complainant to Ms. Williams-Brown, in response to a verbal request to update her medical stating Ms. Williams-Brown ignored her statement that she had FMLA and provided her with a second courtesy copy of her FMLA paperwork. The complainant alleged her FMLA was approved by decision dated March 7, 2017; therefore, she had coverage until March 7, 2018. In

Final Agency Decision
Gwenesther F. Manning
Agency Case Number 4J-606-0034-18
Page 13

addition, WH-380-E, provided a diagnosis and restrictions as well as her condition being permanent. (ROI, Aff. A, p. 36).

Record evidence reflects a letter dated December 30, 2017 from the complainant to Ms. Williams-Brown stating that she began physical therapy on December 28, 2017; however, the progress was undone when she returned to work on December 29, 2017, and was on her feet for 5-1/2 hours. The complainant stated the upcoming physical therapy appointments should be counted toward the hours in her work day and reminded Ms. Williams-Brown that she had instructed her not to sit at the retail window while working on December 15, 2017, and that she had been provided a change of craft by DRAC in a letter dated November 5, 2015, which Ms. Williams-Brown stated she had been unaware of and she complied with request to provide a copy of the letter from DRAC dated November 5, 2015. The complainant informed Ms. Williams-Brown that she had not mailed a letter dated November 29, 2017, to Ms. Tucker, requesting reasonable accommodation; however, by virtue of her providing a copy of that letter to Ms. Williams-Brown, it triggered the reasonable accommodation process in accordance with EL-307. The complainant claimed Ms. Williams-Brown unofficially changed her starting time from 6 a.m. to 12 Noon which was not an effective solution to the problem for working the retail window as it kept her on her feet the majority of her work day. (ROI, Aff. A, p. 37).

Record shows a letter dated December 30, 2017 from the complainant to Jessie Tucker, DRAC Chairperson stating that she informed her in a letter dated March 9, 2017, that based on her last MRI, Dr. Chmell strongly advised her not to push any equipment over 50 pounds, as it would cause further injury to her back. The complainant claimed she was currently experiencing a flare-up from pushing heavy equipment and the physical demands of pushing heavy equipment exceeded her restrictions and had caused new injuries. Also, sorting parcels required her to bend and stoop which was also detrimental to her back and she was experiencing signs of carpel tunnel in both hands and forearms; therefore, it was time to revisit her request for reasonable accommodation. The underlying request of Dr. Chmell had been for the complainant to have a sedentary job; therefore, she urged the committee to look for work that was more suitable. The complainant stated she would continue to work under old restrictions until she updated her restrictions. (ROI, Aff. A, p. 38).

Physician's Certification dated February 23, 2017, by Dr. Chmell indicating the complainant was limited to work with the following restrictions: 25 pound lifting limitation eight hours, sitting, standing, walking up to eight hours per day, climbing one hour, pulling/pushing one hour, simple grasping, fine manipulation eight hours, reaching above shoulder two hours, and driving vehicle six hours, with minimal noise eight hours. (ROI, Aff. A, p. 44).

Physician's Certification dated December 1, 2017, by Dr. Samuel J. Chmell disclosing the complainant was limited to work with the following restrictions: 20 pound lifting limitation; sitting, standing, walking and climbing six to eight hours with 10 minute breaks, to rest every 90 minutes as needed. Pulling/pushing one hour, simple grasping and fine

manipulation eight hours, reaching above shoulder two hours and driving vehicle up to six hours per day. Sedentary position recommended. (ROI, Aff. A. p. 45).

Record shows a letter dated February 22, 2018, from the complainant to Jessie Tucker, Manager HMR/Chairperson DRAC, regarding the request for reasonable accommodation extended to her via DRAC by letter dated October 20, 2015 stating the reassignment offer was affirmed by letter dated November 5, 2015 and the position offered was a Sales Service Associate in Customer Service, Level 06 (FTR) clerk; however, the position she was slotted into was a Sales Service Distribution Clerk, Level 06 (FTR). The complainant alleged the difference being the duties of distribution clerk include function 4 which meant working the docks pushing heavy mail transportation equipment from the dock into the building and so forth. It also includes sorting post mail which requires bending, stooping, and twisting at the torso which impacted her back condition. The position the complainant accepted was not the position in which she was placed and she cannot continue in that position due to medical reasons as they exceed her physical limitations and aggravate her condition of the lower extremities. She was also having difficulty with the repetitive movement of simple grasping required to sort parcels as her hands stiffen, and she had shoulder aches. The complainant claimed that she had not received a response to her letters dated November 16, 2017, December 30, 2017, or January 21, 2018. (ROI, Aff. A, pp. 61-62).

Record evidence shows a letter dated May 8, 2018 from the complainant to Wanda Prater, OIC at Cardiss Collins P&DC, regarding Reconciliation of Job Title/Duties, informing Ms. Prater that she was formerly a Letter Carrier at Ashburn Station, who was offered a position of Sales, Services Associate by DRAC on October 20, 2015, and was placed into a Sales, Services Distribution Associate clerk position. The complainant stated there was a difference in the two positions as the Sales Service Associate position did not include the strenuous distribution duties which were in the past performed by mail handlers but were now being performed by Sales Service Distribution Associates. DRAC had not responded to her request to correct her job title and position. (ROI, Aff. A, p. 65).

Record discloses FMLA forms and documentation indicating the complainant was approved for FMLA leave on March 7, 2017. (ROI, Aff. A, pp. 108-111).

Medical documentation, memorandums, and reports from Samuel Chmell, MD dated February 15, 25, March 11 and 18, 2017 for the complainant regarding her medical condition and restrictions. (ROI, Aff. A, pp. 112-114).

Record also includes medical reports dated February 22 and April 7, 2018 from Samuel Chmell, MD to the US DOL OWCP regarding the complainant's condition of lumbar disc derangement with radiculopathy. (ROI, Aff. A, pp. 115-125).

Claim 1:    On November 27, 2017, she did not believe she was paid for working.

Final Agency Decision
Gwenesther F. Manning
Agency Case Number 4J-606-0034-18
Page 15

The complainant attested that on November 27, 2017, her timecard was not in the rack when she arrived at work so she entered her time on a paper card, PS Form 1260. (ROI, Aff. A, p. 6). She explained she submitted her restrictions to Ms. Williams-Brown and she reminded her that she had worked six hours and her time card was missing which Ms. Williams-Brown acknowledged but never confirmed her time had been input into the system. The complainant advised her timecard was back in the rack the next day; however, she had not confirmed she was paid for working on November 27, 2017 as that could only be verified by pulling the clock rings that were input. She alleged on this same date, Ms. Williams-Brown noted on her leave slip that updated restrictions were needed but did not sign the leave form. The complainant affirmed a grievance was not filed relative to the matter. (ROI, Aff. A, p. 7).

Record shows the Time and Attendance Collection System (TACS) Employee Everything Report for the complainant indicating she worked 5.99 hours (Code 05200) and was charged 2.01 hours AWOL (2400) on November 28, 2017. (ROI, Exhibit 4, p. 1; TACs Reasons Code - Enclosed).

Claim 2: On December 15, 2017, she was told she could not sit down at the retail counter.

The complainant testified she was told on December 15, 2017 that she could not sit down while working at the retail counter by Ms. Williams-Brown. (ROI, Aff. A, p. 7). She claimed that she was the only clerk singled out because the clerks had stools at the retail counter and she was the only clerk who was told she could not sit while working at the window. The complainant clarified that she did not allege she was not accommodated on December 15, 2017 but rather that she was singled out and treated disparately as opposed to a failure to accommodate issue. The complainant indicated that the reason she was given by Ms. Brown was that she received either a call or an email from "downtown" and she asserted that "they were watching us, and they said she could not sit down". She asserted she was working with 3 other clerks this day and none of them were told they could not sit down. (ROI, Aff. A, p. 8). She confirmed a grievance was not filed relative to the issue. (ROI, Aff. A, pp. 9-10).

Claim 3: On January 5, 2018, she was not accommodated when she was forced to sign a modified job offer that possibly violated her restrictions.

The complainant explained she did not allege she was not accommodated on January 5, 2018 but that Ms. Williams-Brown coerced her into signing a modified job offer shortly after submitting updated medical restrictions as requested. (ROI, Aff. A, p. 9). She advised she signed the offer under protest and Ms. Williams-Brown refused to engage in the interactive process to determine whether the job offer was suitable and that did not have an adverse impact on her life. The complainant alleged the modified job required her to work post mail for four hours, continuously standing and write second notices for two hours and her restrictions specified standing intermittently six to eight hours per day. She claimed she attempted to discuss it with Ms. Williams-Brown but she was dismissive to her. The complainant advised she was forced to sign the job offer because Ms.

Williams-Brown threatened to notify the Department of Labor (DOL) if she refused to sign it. (ROI, Aff. A, p. 10). She alleged she told management she felt the job violated her restrictions and was told the offer was a reasonable accommodation. (ROI, Aff. A, pp. 10-11).

The complainant contends that Ms. Brown said the modified job offer on 1/5/2018 was a reasonable accommodation and she responded that the modified jog offer was not a reasonable accommodation because management failed to engage in the interactive process. Further she notes standing 4 consecutive hours to work post exceeded her restrictions to stand intermittently. (ROI, Aff. A, p. 11).

CA-17, Duty Status Report, dated January 4, 2018, for the complainant citing December 5, 2016, as the date of injury, with restrictions of no lifting over 20-pounds, working six to eight hours per day with intermittent walking, climbing and kneeling. The form was annotated that it was submitted to Ms. Williams-Brown on January 5, 2018, at 12:04 p.m. (ROI, Aff. A, p. 39)

PS Form 2499, Offer of Modified Assignment (Limited Duty), dated January 5, 2018 for the complainant disclosing an offer working 4:00 a.m. to 10:00 a.m., with Sun/Wed off days, at 2035 South State Street as a SSDA. The duties were distribution of operation parcels approximately four hours and writing notices, parcels, certified registered mail approximately two hours. The physical requirements were lifting, carrying, standing, walking and climbing six to eight hours per day. The modified assignment offer was signed by Debra R. Williams-Brown and the complainant annotated it as signed under protest because the duties were outside of her restrictions per walking, standing, lifting intermittently, not continuous. (ROI, Aff. A, pp. 40-41).

CA-17, Duty Status Report dated January 11, 2018, for the complainant citing DOI as December 5, 2016 with restrictions of no lifting over 20 pounds six to eight hour, sitting eight hours, standing four hours, walking two hours, pulling/pushing/simple grasping eight hours, fine manipulation four hours reaching above shoulder up to eight hours, and no twisting, bending/stooping, climbing, or kneeling. Handwritten notes: (1) Need 10 minute break out of each 60-minute period; (2) recommend sedentary position; (3) May drive personal car only. (ROI, Aff. A, p. 42).

<u>Claim 4:</u>     Since January 9, 2018, and continuing, she was not accommodated when she was told to perform work that violated her restrictions or go home.

The complainant testified she was not allowed to work the job duties on the modified job offer on January 9, 2018, which was the job offer that she was coerced into signing. (ROI, Aff. A, pp. 11-12). She explained the offer consisted of duties of working post four hours and then writing second notices for two hours. (ROI, Aff. A, p. 12). The complainant claimed when she had worked post mail for four hours and was writing second notices, Ms. Green told her she was to resume working post mail. She alleged she told Ms. Green she was refusing to work post mail due to medical reasons and she was in pain to which

Final Agency Decision
Gwenesther F. Manning
Agency Case Number 4J-606-0034-18
Page 17

Ms. Green told her to work post or go home. The complainant advised she went home. She averred she specifically told Ms. Green that her restrictions were for intermittent standing and not continuous. The complainant claimed that Ms. Green and Ms. Williams-Brown had both stated on separate occasions that they could work her anyway they wanted as long as it did not violate her restrictions. The complainant confirmed she did not file a grievance regarding this issue. (ROI, Aff. A, p. 12).

TACS Employee Everything Reports for the complainant for Pay Periods 02-2-2018 through 12-2-2018 (January 13, 2018 through June 8, 2018), reflect the following work and leave hours: 2018-02-2 - 21.45 work hours 10.55 OWCP; 2018-03-1 - 26.40 work hours 6.22 OWCP 7.38 LWOP; 2018-03-2 - 40.10 work hours; 2018-04-1 - 43.14 work hours; 2018-04-2 - 26.59 work hours 3.41 OWCP; 2018-05-1 - 20.27 work hours; 2018-05-2 - 6.34 work hours 13.92 LWOP 19.74 SL; 2018-06-1 - 23.60 work hours 16.40 LWOP; 2018-06-2 - 29.97 work hours 10.03 LWOP; 2018-07-1 - 29.96 work hours 10.04 LWOP; 2018-07-2 - 1.62 work hours 14.38 LWOP 24.00 SL; 2018-08-1 - 40.00 SL; 2018-08-2 - 32.00 OWCP  8.00 LWOP; 2018-09-1 - 40.00 OWCP; 2018-09-2 - 40.00 OWCP; 2018-10-1 - 40.00 OWCP; 2018-10-2 - 40.00 OWCP; 2018-11-1 - 40.00 OWCP; 2018-11-2 - 40.00 LWOP; 2018-12-1 - 40.00 LWOP; and 2018-12-2 - 40.00 LWOP.  (ROI, Exhibit 4, pp. 2-37, Enclosure).

PS Forms 3971, Request for or Notification of Absence for the period of January 9, 2018 through March 30, 2018, reflects the following: 1/9/2018 - 4.50 Hours for Undergoing Medical Treatment-OTJ Injury Instructed not to hit clock upon 2:02 p.m. arrival from physical therapy; 1/12/2018 - 2.00 Hours for Undergoing Medical Treatment-OTJ jury LWOP/OWCP FMLA #10800872345 Call-in Confirmation #108005532691; 1/18/2018 - 3.50 Hours OWCP #102149496 Instructed to either throw post or go home by Ms. Green after working post from 4-8 sign a.m.; 1/18/2018 - 3.10 Hours OWCP #102149196 Approved – Pending approved case; 1/19/2018 - 3.20 Hours OWCP #102149196 Approved – Pending approved case; 1/20/2018 - 3.50 Hours OWCP #102149196 Approved – Pending approved case; 1/22/2018 - 3.45 Hours OWCP Approved - Pending approval of OWCP; 1/23/2018 - 3.75 Hours LWOP Approved – Pending case approval; 1/25/2018 - 2.75 hours LWOP Approved – Employee isn't able to do anything in restrictions not just post. Pending case qualification approval; 2/22/2018 - 8.00 Hours fSL #108000872345 Disapproved – No documentation provided; 2/23/2018 - 0.50 Hours LWOP Instructed to go home due to restrictions. Disapproved; 2/24/2018 - 6.25 Hours LWOP-OWCP Disapproved – Per restrictions; 2/26/2018 - 6.50 Hours LWOP Disapproved – Pending approval; 2/27/2018 - 7.00 Hours LWOP-OWCP#102149196 Disapproved – No approved OWCP case; 3/1/2018 - 7.00 Hours LWOP-1013 Disapproved – Employee can only walk and stand 1 hour per restrictions. No bending and stooping per restrictions; 3/2/2018 - 7.00 Hours LWOP Disapproved – LWOP not approved. Employee can use AL or SL. Per medical restrictions can stand and walk for only 1 hour. No bending or stooping work 1 hour per restrictions; 3/3/2018 - 7.00 Hours IOD Signed 3/3/18; 3/5/2018 - 2.00 Hours LWOP Signed 3/5/18; 3/6/2018 - 3.50 Hours LWOP Signed 3/6/18; 3/8/2018 - 2.00 Hours LWOP Approved; 3/9/2018 - 2.00 Hours LWOP Signed 3/9/18; 3/10/2018 - 2.00 Hours LWOP Signed 3/10/18; 3/12/2018 - 2.00

Hours LWOP Signed 3/12/18; 3/15/2018 - 2.00 hours LWOP Signed 3/15/18; 3/16/2018 - 2.00 Hours OWCP Signed 3/16/18; 3/17/2018 - 2.00 Hours LWOP Signed 3/17/18; 3/18/2018 2.00 LWOP Signed 3/13/18; 3/19/2018 - 2.00 Hours LWOP Signed 3/19/18; 3/20/2018 - 2.00 hours LWOP Signed 3/20/18; 3/22/2018 - 2.00 Hours LWOP Signed 3/22/18; 3/23/2018 - 2.00 Hours LWOP Signed 3/23/18; 3/24/2018 - 24.00 Hours SL The complainant annotated Ms. Bates refused to sign after insisting that change injury on duty to not injury on duty; 3/29/2018 - 7.00 Hours LWOP Signed 3/29/18. Approved; and 3/30- 4/13/18 79.5 Hours LWOP Signed 3/30/18. Approved - Employee is not limited duty. Employee does not have an approved light duty case. Informed employee to submit light duty request. (ROI, Aff. A, pp. 69-102).

Claim 5:    On February 24, 26, and 27, and March 1-3 and 29, 2018, she was not accommodated when she was only permitted to work about one hour daily.

The complainant explained she worked one hour and 15 minutes on February 24, 2018 and worked one hour on February 26, 27, March 1, 2, 3, and 29, 2018. (ROI, Aff. A, p. 16). She claimed that on February 17, 2018, she submitted her restrictions and a copy of her letter from the DRAC to Ms. Cummings. (ROI, Aff. A, p. 17). The complainant alleged Ms. Cummings made the decision to work her one hour per day due to her restrictions of February 24, 2018. She asserted that Ms. Bates worked her 1 hour on March 29, 2018. (ROI, Aff. A, p. 16). She advised that Ms. Cummings retaliated against her when she refused to push a metal cart because the weight exceeded her restrictions. The complainant noted she also told Ms. Cummings she had been on her feet for over three hours and Ms. Cummings then sent her home. She claimed she worked one hour and 15 minutes on February 24, 2018 and Ms. Cummings sent her home upon her arrival at work. The complainant asserted she worked one hour on February 26, 2018 and was instructed to report to work on February 27, 2018 at 2 pm and work one hour daily. She explained she told Ms. Cummings she did not agree with her interpretation of her restrictions and she was taking restrictions out of context to penalize her. (ROI, Aff. A, p. 18). The complainant alleged that Ms. Cummings stated she could only work one hour per day per her restrictions. She clarified this issue was not an accommodation issue but was a retaliation and disparate treatment issue. (ROI, Aff. A, p. 18).

CA-17, Duty Status Report dated February 15, 2018 for the complainant showing restrictions of lifting 20 pounds one hour, sitting six hours, standing and walking one hour, pulling/pushing one hour, simple grasping, fine manipulation, reaching above shoulder two hours, and no climbing, kneeling, bending/stooping, or twisting. Handwritten notes indicate: sedentary position recommended or disability retirement. Recheck in 30 days. (ROI, Aff. A, p. 43).

Claim 6:    On February 27, 2018, her starting time was changed.

The complainant testified her start time was verbally changed on February 27, 2018 by Ms. Franks-Cummings. (ROI, Aff. A, p. 19). She alleged that no reason was provided for the change in her start time which was changed to 2 pm to work for one hour and

Final Agency Decision
Gwenesther F. Manning
Agency Case Number 4J-606-0034-18
Page 19

leave at 3 pm. The complainant claimed her official start time was 6 am which had unofficially changed to 10 am by Ms. Williams-Brown per the job offer and then changed to 2 pm by Ms. Franks-Cummings. She asserted she did not attempt to discuss the change with Ms. Franks-Cummings because she had displayed nothing but contempt towards her after she refused to push the accountable cart on February 23, 2018. The complainant averred her start time was changed to 11 am under Ms. Bates and she worked post office boxes and scanned packages. She alleged she believed her start time was changed to punish her for standing up for her rights when she refused to push the cart which exceeded her 20-pound weight restriction. (ROI, Aff. A, p. 20). The complainant confirmed a grievance was not filed relative to the start time issue. (ROI, Aff. A, p. 20).

The record shows that the complainant's start time on February 26, 2018 was 6:00 a.m. and on February 27, 2018, and March 1, 2018, it was still 6:00 a.m. (ROI, Exh. 4, p. 17).

Claim 7:      On March 30, 2018, the manager said she would speak to her about resuming her regular schedule, but she never did.

The complainant advised that Ms. Bates was responsible for telling her that she would speak to her about resuming her regular schedule. (ROI, Aff. A, p. 23). She claimed she never returned to her regular schedule after March 3, 2018 which was 6 am. (ROI, Aff. A, p. 24). The complainant explained Ms. Bates never spoke to her about resuming her regular schedule because Ms. Bates went out of town shortly after March 3, 2018. The complainant indicated she did not file a grievance on this issue. (ROI, Aff. A, p. 24).

Claim 8:      On or around March 30, 2018, she was not accommodated when she was told she would only be permitted to work one hour daily.

The complainant alleged on March 29, 2018, she was only allowed to work one hour and was on the clock for 30 minutes on March 30, 2018. (ROI, Aff. A, pp. 16, 22). She identified Ms. Bates as being responsible for allowing her to work only one hour on March 29, 2018. (ROI, Aff. A, p. 16). She claimed that Ms. Franks-Cummings had made the decision she was to work only one hour per day on February 24, 2018. (ROI, Aff. A, p. 17).

Claim 9:      On March 30, 2018, she was not accommodated when she was told that she could not work until her light duty request was approved.

The complainant explained the date was actually March 30, 2018 when Ms. Bates told her that she could not return to work until she had been approved for light duty. (ROI, Aff. A, p. 21). She averred this was not a failure to accommodate claim but was retaliation. The complainant claimed when she arrived at work on March 30, 2018, Ms. Bates called her to the office with her union steward and Ms. Green present and asked if she had a OWCP claim to which she responded no comment. The complainant alleged that Ms. Bates stated she had called OWCP and was told that she did not have an active OWCP

Final Agency Decision
Gwenesther F. Manning
Agency Case Number 4J-606-0034-18
Page 20

claim. She advised that Ms. Bates told her that she was light duty and she could not let her work until she was approved for light duty. The complainant claimed that the union steward intervened and told Ms. Bates that she was made a clerk as an accommodation and that she had given her a copy of her acceptance letter for reasonable accommodation. She alleged that Ms. Bates denied receiving the letter and instructed her to complete a leave request of which she completed requesting 79.5 hours because she had been on the clock for 30 minutes. The complainant contended Ms. Bates signed the leave request in order to get her to leave the building. She claimed she walked into a trap when she came to work and the meeting was an ambush. (ROI, Aff. A, p. 21).

The complainant attested that Ms. Bates gave her the form to request light duty which was dated March 30, 2018 and completed by Ms. Franks-Cummings. (ROI, Aff. A, p. 22). She claimed she had not been allowed to work since March 29, 2018 when she worked one hour and was on the clock for 30 minutes on March 30, 2018. The complainant explained she did not believe applying for temporary light duty was the proper process because it was taking her backwards and reversing the alleged reasonable accommodation. She maintained management had ignored her ever since she began pointing out that she was converted to a SSDA instead of a SSA. (ROI, Aff. A, pp. 22-23).

Request for Temporary Light Duty for the complainant dated March 2, 2018, annotated "Received 3/30/2018". Part B states: Based on the medical restrictions outlined on the accompanying physician or practitioner's certification (4F HR-002) – handwritten notation stating, "No medical restrictions outlined was submitted by employee. This is the only form submitted." The box is checked off for work is not available in my unit. (ROI, Aff. A, p. 103).

### *Prima Facie* Analysis

### Retaliation – Claims 1, 2, 3, 4, 5, 6, 8, and 9

The complainant identified her prior EEO activity as Agency Case Nos. 4J-606-0122-14, 4J-6060-0014-17, 4J-606-0057-17, 4J-606-0018-16, and 4J-606-0021-13. (ROI, Aff. A, pp. 25-26). She confirmed that the management officials involved in the instant complaint were not named in any of the prior EEO activity. (ROI, Aff. A, p. 26). Records show the complainant had 11 prior EEO complaints to the instant complaint with the most recent being Agency Case No. 4J-606-0057-17 which was informally filed on January 30, 2017, formally filed March 29, 2017, and closed via a Final Agency Decision on January 29, 2018 which was presently appealed to the Office of Federal Operations (OFO). (ROI, exhibit 2, pp. 1-28). Thus, the first element has been met.

The second required element for reprisal requires the complainant to establish that the agency official was aware of the protected activity. Ms. Williams-Brown asserted she was not aware of the complainant's prior EEO activity. (ROI, Aff. B, p. 2). Ms. Green advised she was aware of the complainant's engagement in prior EEO activity but she did not

Final Agency Decision
Gwenesther F. Manning
Agency Case Number 4J-606-0034-18
Page 21

recall when she was made aware of it. (ROI, Aff. C, p. 2). Ms. Franks-Cummings advised she was aware of the complainant's EEO activity when she told her that she filed a complaint because Ms. Williams-Brown changed her start time. (ROI, Aff. D, p. 3). Ms. Bates asserted she was not aware of the complainant's engagement in prior EEO activity. (ROI, Aff. E, p. 3). Therefore, the second element has not been met for claims 1, 2, 3, 8, and 9. The second element has been met for claims 4, 5, and 6.

With respect to element three, the Supreme Court has held that in examining retaliation cases, adverse treatment is to be considered a broader category of management conduct than adverse employment actions. Burlington Northern and Santa Fe Ry. Co. v. White, 548 U.S. 53 (2006). Examining the management actions in this case under the broader category of conduct that may be considered adverse treatment, it will be assumed for the purposes of this analysis only that the complainant was subjected to adverse employment actions in regard to her claims in this case.

Turning to the fourth element of the complainant's *prima facie* case, it has already been determined that the responsible management officials for claims 1, 2, 3, 8, and 9 were unaware of the complainant's prior protected activity. It is axiomatic that a management official cannot engage in retaliation for EEO activity which is unknown by the management official. Therefore, the fourth element of the complainant's prima facie case has not been met for these claims. Any circumstantial evidence suggesting a causal link must be regarded as purely coincidental. *See* Demeier v. Department of the Air Force, EEOC Appeal No. 01A11166 (May 23, 2002).

For claims 4, 5 and 6, the record shows that the complainant's prior formal complaint, Agency Case Number 4J-606-0057-17, is still pending as the complainant appealed the FAD to OFO on March 5, 2018. (ROI, Exhibit 2, pp. 1-7). Therefore, it will be assumed that the temporal proximity of the complainant's prior EEO activity and the adverse treatment at issue in claims 4, 5, and 6 is sufficiently close such that an inference of retaliation can be drawn based upon temporal proximity, therefore, the fourth element has been met for these claims.

Accordingly, the complainant has failed to establish a *prima facie* case of retaliation for claims 1, 2, 3, 8, and 9. The complainant has established a *prima facie* case of retaliation for claims 4, 5, and 6.

Having made the determination that the complainant has satisfied the essential requirements of a *prima facie* case, it is important to point out, however, that such a finding is not the equivalent of a finding of discrimination. It is simply proof that, without more, the circumstances involving management's actions may give rise to an inference that discrimination did occur. At this point, the burden shifts to management to establish that its actions were taken for legitimate, non-discriminatory reasons.

## Disability

In order to establish a prima facie case of disparate treatment based on a disability, the complainant must show that she (1) is an "individual with a disability"; (2) is "qualified" for the position held or desired; (3) was subjected to an adverse employment action; and (4) the circumstances surrounding the adverse action give rise to an inference of discrimination. Lawson, supra.

Consequently, the complainant must first show that she was a "person with a disability" within the meaning of the Rehabilitation Act of 1973. Thus, there must be evidence that the complainant: (1) has a physical or mental impairment which substantially limits one or more of that person's major life activities; (2) has a record of such impairment; or (3) is regarded as having such an impairment.

The Americans with Disabilities Act Amendments Act of 2008 became effective January 1, 2009. The Act emphasizes that the definition of disability should be construed in favor of broad coverage of individuals to the maximum extent permitted by the terms of the ADA and generally shall not require extensive analysis. The Act makes important changes to the definition of the term "disability" by rejecting the holdings in several Supreme Court decisions and portions of EEOC's ADA regulations. The effect of these changes is to make it easier for an individual seeking protection under the ADA to establish that he or she has a disability within the meaning of the ADA.

The Act retains the ADA's basic definition of "disability" as an impairment that substantially limits one or more major life activities, a record of such an impairment, or being regarded as having such an impairment. However, it changes the way that these statutory terms should be interpreted in several ways. An impairment that substantially limits one major life activity need not limit other major life activities in order to be considered a disability. An impairment that is episodic or in remission is a disability if it would substantially limit a major life activity when active.

Although the ADAAA did not directly change any of the medical evidence requirements to establish a disability, it significantly altered both the amount and degree of medical evidence that can be required by an agency to establish that an individual has a disability. Most significantly, the amendments altered the degree of evidence required to establish that a medical condition substantially limits a major life activity. Section (2)(b)(5) of the ADAAA specifically states that one purpose of the amendments was: to convey that it is the intent of Congress that the primary object of attention in cases brought under the ADA should be whether entities covered under the ADA have complied with their obligations, and to convey that the question of whether an individual's impairment is a disability under the ADA should not demand extensive analysis. Thus, under the ADAAA, cases must now be read in light of the lowered threshold for determining whether a condition is substantially limiting.

As set forth above, the complainant identified her medical conditions as lumbar radiculopathy and degenerative disc disease which were permanent in nature. (ROI, Aff. A, p. 2). Medical documentation contained in the record discloses the complainant was

Final Agency Decision
Gwenesther F. Manning
Agency Case Number 4J-606-0034-18
Page 23

diagnosed with lumbar radiculopathy and degenerative disc disease and had restrictions of no lifting over 20 pounds, sitting six hours, pushing/pulling one hour, simple grasping, fine manipulation, reaching above shoulders two hours, and standing and walking one hour. (ROI, Aff. A, pp. 39, 42-43, 115-125). Thus, we will assume, without so finding, that the complainant is a person with a disability.

<u>Denial of Accommodation</u>

As the complainant has established that she is a person with a disability, the next element of a *prima facie* case based on a failure to accommodate is to establish that she is "otherwise qualified." The regulations define a "qualified individual with a disability" as a person who satisfies the requisite skill, experience, educational, and other job-related requirements of the position the individual holds or desires and who, with or without reasonable accommodation, can perform the essential functions of that position without endangering the health and safety of the individual or others. 29 C.F.R. §1630.2(m). The essential functions of a position are the fundamental job duties of the position the complainant holds or desires considering whether the position exists to perform the function, whether there are a limited number of individuals available to perform the function, or whether the function is highly specialized and the incumbent was hired for his or her expertise. 29 C.F.R. §1630.2(n). The complainant has the burden of proving that he or she is a "qualified individual with a disability." <u>Jasany v. U.S. Postal Service</u>, 755 F.2d 1244 (6th Cir. 1985).

The complainant explained she could not perform the heavy lifting that was required in moderation in her job description and she was limited in the amount of time she could spend performing strenuous tasks such as working post mail without the proper equipment and was limited from prolonged standing. (ROI, Aff. A, pp. 2-3). She advised her doctor informed that she was not to perform duties that required pushing heavy equipment, bending, stooping or twisting, such was working post mail which required throwing packages at an average of 225-245 packages per hour. (ROI, Aff. A, p. 2). The complainant contended her daily duties consisted of working post mail for four to six hours which required standing and pushing heavy equipment which she could not perform for three to six hours per day without aggravating her back condition. (ROI, Aff. A, p. 3).

As discussed below, management testified the complainant's medical condition affected her ability to perform her work assignment. (ROI, Aff. B, p. 2; Aff. C, p. 2; Aff. D, p. 2; Aff. E, p. 3).

It appears from the record that during the relevant time period of the complaint, the complainant was unable to perform the essential functions of her assignment with or without an accommodation. Consequently, the complainant has failed to establish that she was otherwise qualified.

In order to establish a *prima facie* case of disability discrimination, the complainant must prove, by a preponderance of the evidence, that the agency failed to make a needed

reasonable accommodation, resulting in adverse treatment of her. See <u>Session v. Helms</u>, 751 F.2d 991, 992-3 (9th Cir. 1985), *cert. denied,* 474 U.S. 846 (1985).

As described above, the complainant explained she requested reasonable accommodation through the DRAC and her craft was changed from a carrier to a SSA on October 20, 2015; however, she was changed to a SSDA which required heavy lifting, and performing distribution duties, which she alleges exceeded her restrictions. (ROI, Aff. A, p. 3). She advised she did not regard the accommodation as effective because the Postal Service did a bait and switch with offering the SSA position but not giving her that assignment. (ROI, Aff. A, pp. 3-4). The complainant further testified her restrictions on January 4, 2018 were no lifting over 20 pounds, and sitting, standing, walking, and climbing six to eight hours intermittently and the modified job she was given on January 5, 2018 required her to stand for four hours continuously which violated her restrictions. (ROI, Aff. A, p. 4). The complainant asserted that the duties she was performing were not an accommodation because working post mail was strenuous manual labor that required twisting, bending, and stooping to retrieve and sort packages and also required continuous standing. She alleged that management manipulated the system by invoking other duties as required but were silent on the written job description. The complainant explained she did not request to appear before the DRAC again; however, she had sent several letters to the DRAC chairperson but had not received any response. (ROI, Aff. A, pp. 4-5).

Manager Health and Resource Management Jessie Tucker explained she served as the chairperson for the DRAC for the Chicago District effective April 30, 2017. (ROI, Aff. F, p. 1). She advised the complainant requested to meet with the DRAC and a meeting was held on February 23, 2017. Ms. Tucker noted this was an interactive meeting with the complainant and the committee to discuss her request. (ROI, Aff. F, pp. 1-2). She averred she informed the complainant a decision by the DRAC would be rendered within 30 days of the meeting. (ROI, Aff. F, p. 2). Ms. Tucker advised after continued dialogue with the station manager and taking into consideration the complainant's request to honor her restrictions, distribute workload fairly, and the opportunity to perform soft/allied duties (RTS), it was determined the complainant's restrictions could be accommodated. She asserted the complainant was offered an accommodation which would allow her to perform the essential functions of her position within her medical restrictions and changed her start time to 7:45 am. Ms. Tucker explained the complainant subsequently rescinded her request for reasonable accommodation via letters dated March 9, 24, and 9, 2017 resulting in her request for accommodation being denied. She added the complainant had requested the DRAC search for suitable work but then she rescinded her request for accommodation. (ROI, Aff. F, p. 2).

Chicago District Reasonable Accommodation Committee Accommodation Request Meeting Notifications dated February 6, 2017, and February 2, 2017 advising the complainant that a meeting was scheduled for February 15, 2017, and subsequently revised to February 23, 2017, per the complainant's request to review all information available relative to her request for accommodation. (ROI, Aff. F, pp. 18-20).

Final Agency Decision
Gwenesther F. Manning
Agency Case Number 4J-606-0034-18
Page 25

Record includes emails between Jessie Tucker and Mary Somerville dated March 17, 2017, indicating the complainant's restrictions could be accommodated by allowing her to work on the window servicing customers with the ability to sit down in between customers; accommodating her with a break every 50 minutes without actually leaving the window and the weight limits would be within her restrictions. (ROI, Aff. F, pp. 12-13).

Record shows a letter dated March 22, 2017 from Jessie Tucker, Chairperson, DRAC to the complainant stating there was a delay in processing her request for accommodation due to additional medical documentation submitted and her written request to rescind her requested accommodations. (ROI, Aff. F, p. 11).

Record includes a letter dated April 13, 2017 from Jessie Tucker, Chairperson, DRAC in response to the complainant's letters dated March 29, 2017, March 24, 2017 and March 9, 2017 stating the request for accommodation was denied due to the complainant requesting to rescind her requests for accommodation. The complainant was given 10 business days to appeal the decision by making a written request for reconsideration to the Manager, Human Resources. (ROI, Aff. F, pp. 6- ).

Law Department's Legal Opinion in Response to DRAC's Review of Denial of Reasonable Accommodation dated April 12, 2017, indicates agreement and concurrence in the denial due to the complainant's request to rescind her request for accommodation. (ROI, Aff. F, p. 6).

Ms. Tucker advised she did receive a letter from the complainant dated November 16, 2017 and she spoke with both the complainant and Ms. Williams-Brown in regard to the letter. (ROI, Aff. F, p. 2). She noted that as such, she did not respond in writing to the letter. Ms. Tucker averred that she did not recall receiving letters dated December 30, 2017 or January 21, 2018 and no such letters were contained in the DRAC file. She explained the complainant did submit reassignment requests to other districts for SSDA positions. Ms. Tucker asserted there was also a list of positions made available to the complainant to bid on at the time in which she was granted an accommodation to the clerk craft, all of which were SSDA positions. She further maintained that the PS Form 50s reflect the position that the complainant was placed/bid on due to her accommodation request was a SSDA position. Ms. Tucker asserted the complainant on her own accord bid and was awarded a SSDA position on July 8, 2017. (ROI, Aff. F, p. 2).

Reassignment Notification dated May 6, 2015, informing the complainant she was being considered for the position of PTF Sales, Services/Distribution Associate at the Palos Heights, Illinois Post Office, based upon her request for reassignment to the Central Illinois District. (ROI, Aff. F, p. 25).

List of eReassign Position Requests and Search for Bid Clusters dated February 19, 2015, indicating a list of ten clerk craft positions in the Central Illinois District the complainant submitted requests for or saved. The Search for Bid Clusters printout

disclosing the job title of all positions as Sales, Services/Distribution Associate positions. (ROI, Aff. F, pp. 26-27).

PS Form 50, Notification of Personnel Action dated November 28, 2015 disclosing the complainant was reassigned to the position of Full Time Sales, Services/Distribution Associate at the Irving Park Station as a result of DRAC decision based upon restrictions while in a Carrier position and was now a qualified SSDA. PS Form 50 dated July 8, 2017, indicating the complainant was reassigned to the position of Full Time Sales, Services/Distribution Associate at the Twenty Second Street Station in Chicago, Illinois. (ROI, Aff. F, pp. 28-29).

Record evidence and testimony indicates the complainant originally requested accommodation in 2015 and was granted and provided a reasonable accommodation with a change in craft and reassignment to a SSDA position following an interactive process. The complainant then made another request for accommodation of which the Postal Service engaged in the interactive process with her and an accommodation was identified. However, the complainant subsequently withdrew her request for accommodation resulting in the request being denied. The complainant had been provided modified work based on her medical restrictions that were continuously changing. Following the denial of her OWCP claim, the complainant was required to request and be approved for light duty work. There is nothing in the record that indicates the provided accommodation of modified work did not allow the complainant to perform some of the essential functions of her SSDA position. It should be noted that the complainant is not entitled to the accommodation of her choice, but only to an accommodation that would allow her to perform the essential functions of her position. Disabled worker is not entitled to the reasonable accommodation which he or she prefers and must show a connection between the disabling condition and the requested accommodation. Gile v. United Airlines, Inc., 95 F.3d 492, 498 (7th Cir. 1996); Wiggins v. U.S. Postal Service, EEOC Appeal No. 01953715 (April 22, 1997); and Metzenbaum v. Office of Personnel Management, EEOC Appeal No. 01986974 (April 4, 2002). Additionally, the Postal Service is not required to accommodate an individual by eliminating the essential functions of his or her job or by creating a job not already existing within the organization, including a light duty position. Turco v. Hoechst Celanese Corporation, 101 F.3d 1090, 1093-1094 (5th Cir. 1996); Shiring v. Postmaster General, 90 F.3d 827, 831-832 (3rd Cir. 1996); and Watson v. Lithonia Lighting and National Service Industries, Inc., 304 F.3d 749 (7th Cir. 2002), cert. denied 123 S. Ct. 1286 (2003).

Thus, the complainant has failed to establish a *prima facie* case of failure to accommodate inasmuch as she failed to show the proffered accommodation did not enable her to perform the essential functions of her position and she withdrew her subsequent request for accommodation. As such, the complainant's claim of a *prima facie* case for failure to accommodate fails.

## Disparate Treatment- Claims 2, 3, 4, 5, 6, 8, and 9

Final Agency Decision
Gwenesther F. Manning
Agency Case Number 4J-606-0034-18
Page 27

As noted previously, the complainant may establish a *prima facie* case of disparate treatment by showing that she: (1) belongs to a protected class; (2) was subjected to an adverse employment action; and (3) was treated differently in this regard than similarly situated individuals who were not members of the protected group.

The complainant is a member of a protected class by virtue of her Disability. She also suffered adverse actions in regard to being told she could not sit at the retail counter on December 15, 2017 (claim 2), being forced to sign a modified job offer that possibly violated her restrictions on January 5, 2018 (claim 3), being told to perform work that violated her restrictions or go home since January 9, 2018 (claim 4), only being permitted to work one hour per day on February 24, 26, and 27, and March 1-3 and 29, 2018 (claim 5), having her start time changed on February 27, 2018 (claim 6), being told she would only be permitted to work one hour daily on March 30, 2018 (claim 8), and told that she could not work until her light duty request was approved on March 30, 2018 (claim 9).

The complainant identified Denise Lee (City Carrier, Known Medical Limitations), Ethel Kinghouse (Carrier Technician, Known Medical Limitations), and Rashida Thomas (Carrier Technician, Known Medical Limitations) as comparators who were carriers that were allowed to perform clerk duties. (ROI, Aff. A, p. 14; Exhibit 8, p. 1; Exhibit 9, p. 1; Exhibit 10, p. 1). Specifically, the complainant alleged that Ms. Lee had been a modified carrier since 2006 and Ms. Kinghouse had been allowed to sit as needed and they were both performing clerk duties and not street mail delivery. (ROI, Aff. A, p. 14). She claimed Letter Carrier Victor[6] (City Carrier, Unknown Medical Limitations) was assigned to the Irving Park Station and was performing clerk duties and Cassandra Glover (SSDA, Known Medical Limitations) was allowed to work with restrictions for a medical condition that was not work-related. (ROI, Aff. A, pp. 14, 29; Exhibit 7, p. 1).

Ms. Williams-Brown averred that the complainant never worked with her (Ms. Williams-Brown) as a carrier and was a clerk, not a carrier. (ROI, Aff. B, p. 8). She advised that Ms. Kinghouse had a schedule change when assigned as lobby director, working 7:30 am to 9 am and Ms. Lee's hours were reduced to four hours per day and she was assigned to clear carriers from 8 am to 2 pm. (ROI, Aff. B, p. 11, 15).

Ms. Green testified that Letter Carrier Victor did not work at the Twenty-Second Street Station. (ROI, Aff. C, p. 8). She asserted that she was not aware of Ms. Glover not being able to work while the complainant was on the clock working. (ROI, Aff. C, p. 14).

As discussed above, if employees have different supervisors, perform different job functions, were subject to different job standards, engaged in different conduct, or worked during different time periods, they are not similarly situated. O'Neal, *Id.*; Allen v. Department of the Navy, EEOC Request No. 05900539 (June 15, 1990); Willis v. Department of the Treasury, EEOC Appeal No. 01A51459 (March 16, 2003); and Stewart v. Department of Defense, EEOC Appeal No. 01A02890 (June 27, 2001). Additionally,

---

[6] The complainant did not identify this comparator's full name. (ROI, Aff. A, p. 14).

for employees to be considered similarly situated, their medical and physical restrictions must be the same as the complainant's. Curtin v. U.S. Postal Service, EEOC Appeal 01891910 (March 27, 1990) Briand v. U.S. Postal Service, EEOC Appeal 01932677 February 2, 1994); Woody v. TVA, EEOC Appeal 0120063987 (December 17, 2007).

Ms. Lee, Ms. Kinghouse, Ms. Thomas, and Letter Carrier Victor are not similarly situated as these employees hold different positions than the complainant. Further, Letter Carrier Victor also works at a different location. Ms. Glover is not similarly situated as there is no evidence she had similar circumstances or was not approved for light duty allowing her to work. Additionally, there is no evidence any of the identified comparators had similar medical restrictions as the complainant.

Based on the foregoing, there is no evidence that an employee outside the complainant's protected purview was treated better under similar circumstances. Therefore, the complainant has failed to establish a *prima facie* case as it related to her claims.

While the complainant is not limited to presenting comparative evidence to establish a *prima facie* case of disparate treatment discrimination (See Lipcsey v. U.S. Postal Service, EEOC Appeal No. 01981884 (January 6, 2000)), she has not presented any other evidence that affords a sufficient basis from which to draw an inference of discrimination.

## Management's Non-Discriminatory Reason

Assuming, but only for the sake of argument, that the complainant has also established a *prima facie* case of discrimination based on disability and reprisal for claims 1, 2, 3, 8, and 9, management has articulated a legitimate, non-discriminatory explanation for their actions.

Manager Customer Services Debra Williams-Brown advised she was aware of the complainant's medical condition. (ROI, Aff. B, pp. 1-2). She averred that complainant had restrictions of no lifting over five pounds, no bending, no pushing/pulling more than 30 pounds, and only working four hours. Ms. Williams-Brown asserted the complainant's medical condition affected her ability to perform her work assignment because she was limited in standing, lifting, and bending. (ROI, Aff B, p. 2).

Supervisor Customer Services Genise Green explained she was aware the complainant had a medical condition as she had submitted medical documentation for different issues. (ROI, Aff. C, p. 1). She advised the complainant informed her that she could not perform a certain job within her craft. (ROI, Aff. C, p. 1). Ms. Green averred the complainant's job duties consisted of throwing parcels, lifting 35 to 70 pounds, working at the window, lifting and bending. She noted she did not recall the complainant's specific work limitations as the complainant had not had a consistent medical condition. Ms. Green asserted the complainant's medical condition affected her ability to perform her work assignment because she claimed she could only sit at a desk. (ROI, Aff. C, p. 2).

Final Agency Decision
Gwenesther F. Manning
Agency Case Number 4J-606-0034-18
Page 29

Supervisor Customer Services Talena Franks-Cummings advised she was the Acting Manager Customer Services at the Twenty-Second Street Post Office from January 20, 2018 to March 3, 2018. (ROI, Aff. D, p. 1). She explained she was aware the complainant had medical restrictions; however, she did not know the complainant specific condition or injury. (ROI, Aff. D, p. 2). Ms. Franks-Cummings noted there were several sets of restrictions during her tenure at the Twenty-Second Street office. She averred that the complainant was limited in standing and walking up to four hours with a limited amount of bending and stooping. She asserted when she left the Twenty-Second Street location, the complainant could only walk and stand for one hour. (ROI, Aff. D, p. 2).

Ms. Franks-Cummings advised that most of the clerk's job duties consisted of standing, walking, lifting, and bending which included throwing parcels that required lifting up to 50 pound and being into a container to pick up the parcels. (ROI, Aff. D, p. 2). She averred that the distribution of mail tubs required bending into the equipment and lifting tubs of mail and walking to the carriers' cases, throwing hot case mail, which required standing and throwing the mail, and knowledge of the scheme and the station. She noted that throwing the hot case could be performed while sitting and sales associates on the window were required to stand while serving customers and being able to lift up to 70 pounds, if necessary. Ms. Franks-Cummings advised that processing UBBM required walking case to case and bending and lifting the mail tubs for sorting. She asserted the complainant's condition limited her ability to perform her work assignment because she was unable to throw large heavy parcels, and bend into the equipment to retrieve the small parcels for throwing, and she was able unable to lift and drop tubs to the carrier cases. (ROI, Aff. D, p. 2).

Manager Customer Services Tiffany Bates attested the complainant informed her that she had back pain that was not work-related. (ROI, Aff. E, p. 1). She explained she learned of the complainant's medical condition during the week of March 5-8, 2018 when she would assign different tasks for the complainant to complete and she would tell her what she could and could not do due to her back. Ms. Bates averred the complainant's duties were performing sales and customer services at retail window which included maintaining sufficient inventory, accepting and delivering packages and accountable mail, issuing and cashing money orders, accepting and responding to customer claims and inquires, providing product and service information to customers, handling and processing customer purchases and returns of products and services, maintaining appearance of store, conducting inventories, verifying presort and bulk mailings of all classifications, checking and setting post off stamp vending machines and postage meters, renting post office boxes, assigning and clearing accountable items, distributing primary and one or more secondary scheme of incoming mail by delivery point based on distribution schemes, distributing primary and one or more secondary schemes of outgoing mail for dispatch based on schemes, and other duties like maintaining records, facing and cancelling mail, making emergency carrier relays, labeling and tying out mail for dispatch, and other related duties for distribution. (ROI, Aff. E, p. 2). She identified the complainant's restrictions as lifting/carrying up to 20 pounds intermittently, sitting six

Final Agency Decision
Gwenesther F. Manning
Agency Case Number 4J-606-0034-18
Page 30

hours continuously, simple grasping, fine manipulation, and reaching above shoulder two hours intermittently, and standing and walking one hour per day. (ROI, Aff. E, p. 3). Ms. Bates further asserted the complainant medical condition affected her ability to perform her work assignment because she could not perform the physical requirements of assigned job position. (ROI, Aff. E, p. 3).

Claim 1:      On November 27, 2017, she did not believe she was paid for working.

Ms. Williams-Brown testified she did not recall this incident. (ROI, Aff. B, p. 3). She explained she did not know how the complainant could have worked and not been paid. (ROI, Aff. B, p. 4).

Ms. Green testified she did not know if the complainant worked on November 27, 2017 and was paid. (ROI, Aff. C, p. 3). She explained if the complainant submitted any paperwork for pay, whatever she submitted would have been inputted. Ms. Green advised Ms. Williams-Brown was involved in this issue. (ROI, Aff. C, p. 3).

Claim 2:      On December 15, 2017, she was told she could not sit down at the retail counter.

Ms. Williams-Brown explained it was the Chicago District policy that a clerk could not sit and wait on customers while working the retail counter. (ROI, Aff. B, p. 4). She advised the complainant was instructed regarding the Chicago Window Service Policy. Ms. Williams-Brown averred that the complainant could stand according to her medical restrictions. (ROI, Aff. B, p. 4).

Ms. Green advised she was not aware of this incident. (ROI, Aff. C, p. 4). She further explained if she had told the complainant she could not sit while working the retail counter, it would have been while she was serving customers. Ms. Green averred that she had instructed all retail clerks on this and all clerks had been told not to sit while servicing customers. (ROI, Aff. C, pp. 4-5). She maintained that service talks were also conducted about the issue. (ROI, Aff. C, p. 5).

Claim 3:      On January 5, 2018, she was not accommodated when she was forced to sign a modified job offer that possibly violated her restrictions.

Ms. Williams-Brown advised she did not recall this specific modified job offer. (ROI, Aff. B, p. 5). She explained the complainant had several job offers that she refused to sign until the union steward informed her that management did not have to provide her work if she refused to sign the offer. Ms. Williams-Brown averred the complainant had seven total job offers and she simply refused to work any job. She maintained the complainant never stated the duties were violating her medical restrictions and just called in all of the time. (ROI, Aff. B, p. 6). Ms. Williams-Brown asserted that management worked the complainant within her restrictions. She advised the complainant was never forced to sign a job offer; however, she refused several offers. Ms. Williams-Brown contended the

job offers were based on her restrictions and were a reasonable accommodation. (ROI, Aff. B, p. 6).

Ms. Green advised she had no knowledge of this job offer and was not involved in it. (ROI, Aff. C, p. 5).

Claim 4:      Since January 9, 2018, and continuing, she was not accommodated when she was told to perform work that violated her restrictions or go home.

Ms. Williams-Brown asserted the complainant was not told to perform work that violated her restrictions on January 9, 2018. (ROI, Aff. B, p. 6). She attested the complainant refused to pick up small parcels and stood in the middle of the floor watching other clerks work. Ms. Williams-Brown explained management likely told the complainant if she could not perform the duties of her modified job (2499), she must go home because the job offer did not violate her restrictions. She advised the modified job offer was a reasonable accommodation and the complainant needed to go back to the carrier craft if she could not perform the modified job. Ms. Williams-Brown noted that Ms. Green and Samara Byrd (retired) were also involved in the issue. She contended the complainant refused to work any assignment. (ROI, Aff. B, p. 7).

Ms. Green testified the complainant was told to perform the duties within her restrictions and all the duties she had to perform were within her restrictions. (ROI, Aff. C, p. 6). She asserted that none of the assigned job duties violated the complainant's restrictions. Ms. Green advised Ms. Williams-Brown was also involved in assigning the complainant work. (ROI, Aff. C, p. 6).

Claim 5:      On February 24, 26, and 27, and March 1-3 and 29, 2018, she was not accommodated when she was only permitted to work about one hour daily.

Ms. Green averred she did not make the decision to only permit the complainant to work one hour. (ROI, Aff. C, p. 10). She explained she had returned from vacation and was told the complainant had submitted updated medical only permitting her to work one hour. Ms. Green noted Ms. Franks-Cummings was involved in the decision. (ROI, Aff. C, pp. 10-11).

Ms. Franks-Cummings testified that the complainant's restrictions stated she could only stand and walk for one hour and they did not have any sitting only work available at the station. (ROI, Aff. D, p. 3). She explained the complainant stated she would still work the UBBM where she would sit and process the mail; however, she was unable to do this because she still had to walk from case to case to lift and pick up the mail which would require walking and standing over the one-hour restriction. Ms. Franks-Cummings averred that working the window would require the complainant to stand because postal policy required clerks to stand while serving the customers. She confirmed she was responsible for making the decision to only allow the complainant to work one hour daily based on her restrictions at that time. Ms. Franks-Cummings advised the complainant

questioned her work assignment, stating she could perform the work; however, the assignments required her to walk and stand. (ROI, Aff. D, pp. 3-4). She contended that for example if the complainant answered the phone, it would require her to get up and walk and stand when she had to look for a package for the customers and assist with customer complaints. (ROI, Aff. D, p. 4). Ms. Franks-Cummings maintained the complainant was told the decision to work her for one hour was due to her medical restrictions. She asserted the CA-17 that was submitted at that time stated the complainant could only walk and stand for one hour. Ms. Franks-Cummings maintained she did not work employees outside of their medical restrictions. (ROI, Aff. D, p. 4).

Ms. Bates identified Ms. Franks-Cummings as being responsible for the complainant being limited to working one hour per day. (ROI, Aff. E, p. 3). She explained she was not aware of the complainant's work hours as she was not assigned to the Twenty-Second Street station at that time. (ROI, Aff. E, pp. 3-4).

Claim 6: On February 27, 2018, her starting time was changed.

Ms. Williams-Brown advised that she did not recall the date; however, the complainant's start time was changed to 2 pm and she came in at 6 am and was sent home and instructed to come back at 2 pm. (ROI, Aff. B, p. 13). She asserts that the complainant's time was changed in November 2017. (IF, Aff. B, p. 12). She explained the complainant went home and called in and did not return to work for several days. Ms. Williams-Brown asserted the complainant refused to follow the time on her job offer and came in at any time she wished. She averred that she allowed the complainant to sit and remove herself from the window when her back hurt. Ms. Williams-Brown further maintained the complainant refused to follow instructions and sat and waited on every customer. (ROI, Aff. B, p. 13).

Ms. Green advised she was not involved in this decision; however, she believed the complainant's start time did change. (ROI, Aff. C, p. 11). She explained she was not certain who was involved in the decision and she was not sure if Ms. Franks-Cummings made the decision. (ROI, Aff. C, pp. 11-12).

Ms. Franks-Cummings advised the complainant's start time was changed due to the needs of the operation. (ROI, Aff. D, p. 5). She explained the complainant was unable to perform the necessary work in the mornings which was the critical time for the operation. Ms. Franks-Cummings averred the complainant was moved to a later time that was not as critical and where there was work suited for her restrictions. She confirmed the complainant was told the change was based on the needs of the operation and for work within her restrictions. (ROI, Aff. D, p. 5).

Claim 7: On March 3, 2018, the manager said she would speak to her about resuming her regular schedule, but she never did.

Ms. Bates advised she was the manager effective March 3, 2018; however, she did report to the Twenty-Second Street office until March 4, 2018. (ROI, Aff. E, p. 4). She averred that she did not speak with the complainant on March 3, 2018 and had no contact with her prior to March 5, 2018. (ROI, Aff. E, pp. 4-5).

Claim 8:     On or around March 30, 2018, she was not accommodated when she was told she would only be permitted to work one hour daily

Ms. Bates advised the complainant was only permitted to work one hour per day based on her medical restrictions. (ROI, Aff. E, p. 5). She further explained the complainant's medical documentation stated she could only stand for one hour. Ms. Bates confirmed she made the decision in regard to the complainant only being allowed to work one hour per day after reviewing the CA-17 she submitted. She noted no other manager was involved in the decision. Ms. Bates averred that the complainant did not question the decision to only allow her to work one hour per day and stated she had no comment. She maintained a discussion was held with the complainant with her union representative and Ms. Green present. (ROI, Aff. E, p. 6).

Claim 9:     On March 30, 2018, she was not accommodated when she was told that she could not work until her light duty request was approved

Ms. Green advised the complainant was told she could not work until her light duty request was approved by Ms. Bates and she (Ms. Green) was also involved in the decision. (ROI, Aff. C. p. 13). She explained the complainant was given light duty paperwork and told she needed to send the paperwork to the West Harrison Street office. Ms. Green averred the complainant was told that she needed to apply for light duty because she did not have an on-the-job injury. She noted the complainant did not have a job injury claim and/or case number to support her work request. (ROI, Aff. C, p. 14).

Ms. Bates confirmed the complainant was told on March 31, 2018 that she could not work until her light duty request was approved. (ROI, Aff. E, p. 6). She advised that she told the complainant with her union representative and Ms. Green present of the light duty process. Ms. Bates averred that she explained to the complainant that based on her non-job related injury, she could not fulfill her required job duties and she would need to get light duty approval. She contended that she also explained to the complainant that after reviewing her documentation she submitted and speaking with injury compensation, it was determined that her injury qualified as light duty. (ROI, Aff. E, pp. 6-7)

Ms. Tucker averred the complainant did not have an approved OWCP claim in effect on or about March 30, 2018. (ROI, Aff. F, p. 2). She explained the complainant sustained an injury on December 5, 2016; however, she did not report the injury until March 2017 and the claim was denied by DOL effective March 14, 2018. Ms. Tucker advised that the Health Resource Management office did not receive any other notification that the complainant sustained any other injuries. (ROI, Aff. F, p. 2)

Final Agency Decision
Gwenesther F. Manning
Agency Case Number 4J-606-0034-19
Page 34

OWCP Agency Query System (AQS) Injured Worker Case Query for the complainant indicating a revised CA 1 Form was received on April 3, 2017, and denied on March 14, 2018. (ROI, Aff. F, p. 4-5).

Emails between Jessie Tucker and multiple managers dated December 16, 2017, through January 10, 2017, indicating the complainant's requests should be considered as light duty as all of her workers' compensation cases had been closed and/or denied. (ROI, Aff. F, pp. 21-23).

Based on the evidence in the record, management has established their non-discriminatory reason(s) for their actions. This analysis will now address whether there is evidence of pretext.

## Pretext

At this point, the complainant has the burden of proving that management's stated reason is not only pretext, but is pretext for intentional discrimination. Tincher v. Wal-Mart Stores Inc., 118 F.3d 1125, 1129 (7th Cir. 1997). Pretext could be demonstrated by showing "such weaknesses, impossibilities, inconsistencies, incoherencies, or contradictions in the Agency proffered reasons for its action that a reasonable fact-finder could rationally find them unworthy of credence and then infer that the employer did not act for the asserted non-discriminatory reason. Morgan v. Hiliti, Inc. 108, F.3d 1319, 1323, (10th Cir. 1997). To do this, the complainant must have shown that, in spite of the articulated non-discriminatory explanation, an overall inference of discrimination could be discerned by a preponderance of the evidence. U.S. Postal Service Board of Governors v. Aikens, 460 U.S. 711, 714-17 (1983). In other words, the complainant must have shown that the Agency was "more likely motivated by discriminatory reasons. [Citation omitted]" than not. Hill v. Social Security Administration, EEOC Appeal No. 01970512 (June 8, 2000). Or, the complainant could have shown that the proffered explanation of the Agency was unworthy of credence. Texas Department of Community Affairs v. Burdine, 450 U.S. 248, 256 (1981). Essentially, the record must have shown that the Agency articulated a false reason and that its real reason was discrimination. St. Mary's Honor Center v. Hicks, 509 U.S. 502, 515 (1993).

According to the Court, it was not sufficient "to disbelieve the employer; the fact finder must believe the plaintiff's explanation of intentional discrimination." Hicks, 509 U.S. at 519. The agency was not persuaded that management's actions were motivated by discrimination. The complainant did not offer any direct evidence, corroborating testimony from another witness, or documentation, which would have confirmed her claim that management's actions were discriminatory.

Claim 1:     On November 27, 2017, she did not believe she was paid for working

The complainant averred in response to her prior EEO activity being a factor in claim 1 that management had pulled her timecard in the past to keep her from clocking in to start

her tour. Furthermore she asserted that this was a duplicate question and she had responded to questions 25 and 26. However, there is nothing that would indicate why she believed her EEO activity was a factor. (ROI, Aff. A, p. 26). She attested that her medical condition had nothing to do with this issue. (IF, Aff. A, p. 7).

Ms. Williams-Brown contended the complainant's prior EEO activity was not a factor in claim 1. (ROI, Aff. B, p. 4).

Ms. Green asserted the complainant's prior EEO activity was not a factor in claim 1. (ROI, Aff. C, p. 4).

Claim 2:     On December 15, 2017, she was told she could not sit down at the retail counter.

The complainant asserted that being told she could not sit down while working at the retail counter was an act of retaliation. (ROI, Aff. A, pp. 8, 27). The complainant noted that her medical condition was not a factor, retaliation was. (ROI, Aff. A, p. 8).

Ms. Williams-Brown maintained the complainant's medical condition and prior EEO activity were not factors in claim 2 because her restrictions permitted her to stand. (ROI, Aff. B, pp. 4-5).

Ms. Green contended the complainant's medical condition and prior EEO activity were not factors as all clerks were told not to sit at the retail counter while servicing customers. (ROI, Aff. C, p. 4).

Claim 3:     On January 5, 2018, she was not accommodated when she was forced to sign a modified job offer that possibly violated her restrictions.

The complainant asserted her medical condition was a factor in claim 3 because she would not have been given the job offer if she did not have medical condition. (ROI, Aff. A, p. 11). She alleged her prior EEO activity was factor because the people who watched her downtown on live video stream were aware of her prior EEO activity. (ROI, Aff. A, p. 27).

Ms. Williams-Brown maintained the complainant's medical condition was a factor in claim 3 as the modified job was based on her restrictions. (ROI, Aff. B, p. 6). She advised she was not aware of any prior EEO activity for the complainant. (ROI, Aff. B, p. 6).

Claim 4:     Since January 9, 2018, and continuing, she was not accommodated when she was told to perform work that violated her restrictions or go home.

The complainant alleged that claim 4 was in retaliation for filing prior EEO complaints and for filing grievances. (ROI, Aff. A, pp. 13, 27). She claimed her medical condition was a

factor because management was aware she had a medical condition and used it to justify changing her schedule. (ROI, Aff. A, p. 13).

Ms. Williams-Brown explained the complainant's medical condition was a factor in claim 4 to the extent that management had to give her work she could do. (ROI, Aff. B, p. 7). She asserted the complainant's prior EEO activity was not a factor in claim 4. (ROI, Aff. B, p. 7).

Ms. Green averred the complainant's medical condition and prior EEO activity were not factors in claim 4. (ROI, Aff. C, p. 7).

Claim 5:     On February 24, 26, and 27, and March 1-3 and 29, 2018, she was not accommodated when she was only permitted to work about one hour daily.
Claim 8:     On or around March 30, 2018, she was not accommodated when she was told she would only be permitted to work one hour daily.

The complainant asserted her medical condition was a factor in claims 5 and 8 because it was being used to deny her a fair day's work due to her restrictions. (ROI, Aff. A, p. 18). She contended her prior EEO activity was a factor because management did not work other carriers out of their modified job offers and she was a carrier whom management changed her craft to a clerk. (ROI, Aff. A, p. 27).

Ms. Green noted she believed the complainant's medical condition was a factor in being assigned one hour of work; however, her prior EEO activity was not a factor. (ROI, Aff. C, p. 11).

Ms. Franks-Cummings explained the complainant's medical condition was a factor in claim 5 because the decision was based on her medical restrictions. (ROI, Aff. D, p. 4). She averred the complainant's prior EEO activity was not a factor in the decision . (ROI, Aff. D, p. 4).

Ms. Bates averred the complainant's medical condition was a factor in claim 8 as she was not medically cleared to perform the required job duties of her position. (ROI, Aff. E, p. 6). She further noted the complainant's prior EEO activity was not a factor in the issue. (ROI, Aff. E, p. 6).

Claim 6:     On February 27, 2018, her starting time was changed.

The complainant contended that the decision to change her start time was motivated by retaliation because Ms. Franks-Cummings was angry at her refusal to push the cart which would not have occurred if she did not have a medical condition making it a factor. (ROI, Aff. A, p. 20). She claimed her prior EEO activity was a factor because management was using CCAs and letter carriers on the overtime desired list to work post on a daily basis and should have recruited an employee without restrictions to work earlier on post. (ROI, Aff. A, p. 28). The complainant alleged her start time was changed from 6 am to 4 am

then to 2 pm and then to 11 am and she was the only full-time career employee whose start time kept changing. (ROI, Aff. A, p. 20).

Ms. Green advised the complainant's medical condition was a factor in claim 6 to the extent that she was accommodated in any way that management could assist in her medical condition. (ROI, Aff. C, p. 12). She asserted the complainant's prior EEO activity was not a factor in her start time being changed. (ROI, Aff. C, p. 12).

Ms. Franks-Cummings asserted that the start time change was based on the needs of the operation as well as the complainant's medical restrictions in providing her work she could perform. (ROI, Aff. D, p. 6). She maintained the complainant's prior EEO activity was not a factor in the decision. (ROI, Aff. D, p. 6).

Claim 7:     On March 3, 2018, the manager said she would speak to her about resuming her regular schedule, but she never did.

The complainant advised she did not believe her medical condition or her prior EEO activity were factors in claim 7 and the issue was only bad timing. (ROI, Aff. A, p. 24, 28-29)

Claim 9:     On March 30, 2018, she was not accommodated when she was told that she could not work until her light duty request was approved.

The complainant alleged her medical condition was a factor in claim 9 because Ms. Bates stated she could not work until she was approved for light duty due to her having restrictions. (ROI, Aff. A, pp. 22-23). She advised she also believed her prior EEO activity was a factor because the manager she named in prior complaints was the light duty coordinator. (ROI, Aff. A, p. 28).

Ms. Green explained the complainant's medical condition was a factor in claim 9 to the extent there was no work available for her at the station with her medical condition. (ROI, Aff. C, p. 13). She asserted the complainant's prior EEO activity was not a factor in the issue. (ROI, Aff. C, p. 13),

Ms. Bates asserted the complainant's medical condition was a factor in claim 9 as light duty approval came from the postmaster. (ROI, Aff. E, p. 7). She contended the complainant's prior EEO activity was not a factor in the matter. (ROI, Aff. E, p. 7).

Further, the complainant offered no other evidence or testimony to support these assumptions on her part. (ROI, Aff. A, pp. 1-32). Moreover, the complainant offered no evidence to refute the explanation that any time she submitted as having worked was input into the system on November 27, 2017. Nor did she offer anything to disprove the reason she was told she could not sit at the retail counter was per District policy, no clerks could sit while servicing customers. The complainant also offered no evidence to refute the explanation that her modified job duties were within her medical restrictions and the

Final Agency Decision
Gwenesther F. Manning
Agency Case Number 4J-606-0034-18
Page 38

reduction to one hour of work daily was due to her standing restriction and available work. Nor did she offer anything to disprove the reason her start time was changed was due to the needs of the operation and available work within her restrictions. Lastly, she offered no evidence to refute the explanation that she was told she could not work until she had being approved for light duty because she did not have an on-the-job injury and her OWCP claim had been denied.

Additionally, other than her subjective speculation and opinions, the complainant did not present any evidence to indicate that the agency official who made the decision relative to the action taken harbored a discriminatory animus toward members of her protected groups.

The complainant's allegations are not supported by the totality of the record and she has failed to present any plausible evidence that would demonstrate that management's reasons for its actions were factually baseless or not its actual motivation. Tincher v. Wal-Mart Stores, Inc. Id; and Morgan v. Hilti, Inc., Supra. A complainant's subjective beliefs cannot be probative evidence of pretext and, therefore, cannot be the basis of judicial relief. Elliot v. Group Medical & Surgical Service, 714 F.2d 556, 557 (5th Cir. 1983), cert. denied, 467 U.S. 1215, (1984); see also, Billet v. CIGNA Corp., 940 F.2d 812, 816 (3rd Cir. 1991). The complainant can second-guess the wisdom of the agency's business decisions. Thus, agencies are free to discharge, promote, demote, or transfer individuals for any reason, fair or unfair, so long as the decision is not a pretext for discrimination. Damon v. Fleming Supermarkets of Florida, Inc., 196 F.3d 1354, 1361 (11th Cir. 1999); Nix v. WLCY Radio/Rahall Communications, 738 F.2d 1181, 1187 (11th Cir. 1984).

In other words, there was nothing that showed by a preponderance of the evidence that the legitimate explanations given by the agency were pretext for discrimination. Hammons v. HUD, EEOC Request No. 05971093 (March 5, 1999). Hence, the complainant has not shown that the agency's explanation for its action is a pretext for discrimination.

## Conclusion

After carefully considering the entire record, and applying the legal standards outlined in McDonnell Douglas Corporation v. Green, 411 U.S. 792 (1973); Prewitt v. U.S. Postal Service, 662 F.2d 292 (5th Cir. 1981) (applying to cases brought under the Rehabilitation Act); and Burlington Northern Santa Fe Railway Company v. White, 548 U.S. 53 (2006) (applying to reprisal cases); the evidence does not support a finding that the complainant was subjected to discrimination as alleged. Consequently, this complaint is now closed with a finding of no discrimination.

## Appeal Rights

### APPEAL TO EEOC

The complainant has the right to appeal the Postal Service's final decision to the:

Final Agency Decision
Gwenesther F. Manning
Agency Case Number 4J-606-0034-18
Page 39

Director,
Office of Federal Operations
Equal Employment Opportunity Commission (EEOC)
P.O. Box 77960
Washington, DC 20013-8960

**within 30 calendar days of receipt of this decision**. The complainant must use EEOC Appeal Form 573, a copy of which is enclosed, in connection with the appeal. The complainant may also deliver the appeal in person or by facsimile provided that briefs filed by facsimile are ten or fewer pages in length. Any supporting statement or brief must be submitted to the EEOC within 30 calendar days of filing the appeal. Along with the appeal, the complainant must submit proof to the EEOC that a copy of the appeal and any supporting documentation and/or brief were also submitted to the:

NEEOISO – FAD
National EEO Investigative Services Office
USPS
P. O. Box 21979
Tampa, FL 33622-1979

The complainant is advised that if the complainant files an appeal beyond the 30-day period set forth in the Commission's regulations, the complainant should provide an explanation as to why the appeal should be accepted despite its untimeliness. If the complainant cannot explain why the untimeliness should be excused in accordance with EEOC Regulation 29 C.F.R. §1614.604, the Commission may dismiss the appeal as untimely.

## RIGHT TO FILE A CIVIL ACTION

Alternatively, if the complainant is dissatisfied with the Postal Service's decision in this case, the complainant may file a civil action in an appropriate U.S. District Court within 90 calendar days of receipt of the Postal Service's final decision, within 90 calendar days of the EEOC's final decision on any appeal, or after 180 days from the date of filing an appeal with the EEOC if no final decision has been rendered. If the complainant chooses to file a civil action, that action should be styled **Gwenesther F. Manning v. Megan J. Brennan, Postmaster General**. The complainant may also request the court to appoint an attorney for the complainant and to authorize the commencement of that action without the payment of fees, costs, or security. Whether these requests are granted or denied is within the sole discretion of the District Judge. The application must be filed within the same 90-day time period for filing the civil action.

Final Agency Decision
Gwenesther F. Manning
Agency Case Number 4J-606-0034-18
Page 40

*Penny Fleury*
EEO Services Analyst                    Date:  October 26, 2018
NEEOISO
P. O. Box 21979
Tampa, FL 33622-1979

**Enclosure:** EEOC Appeal Form 573
             TACs Reasons Code

cc:
Complainant
Gwenesther F. Manning
19214 Lange St
Lansing IL 60438-3894
**USPS Tracking No.**  9114 9011 2308 6001 6428 26