

FILED

DB

4/13/2022

THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

UNITED STATES DISTRICT COURT
For The Northern District of Illinois
Eastern Division

| | | |
|---|---|---|
| Gwenesther Manning | ) | 21 CV 1440 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Judge Guzman |
| | ) | |
| Louis DeJoy, Postmaster General | ) | |
| U.S. Postal Service | ) | Magistrate Judge Jantz |
| Defendant. | ) | |

<u>Plaintiff's Rule 72(a) Objections to Minute Order, Dkt. 61</u>

1.      The Order of Magistrate Judge Jantz ruled as follows: Defendant's motion to compel [31] and plaintiff's motion for a protective order [40] are granted in part and denied in part. Plaintiff is directed to provide the compelled authorizations (itemized at the end of this order), and interrogatory response by 4/15/22. Defendant is authorized to use plaintiff's Office of Worker's Compensation file in this matter. Defendant's motion for leave to file its response to plaintiff's motion for a protective order under seal [49] is also granted.

2.      Plaintiff objects to the Courts order granting defendant's motion to compel and authorizing defendant to use Plaintiff's OWCP files from 2015 and 2016 because the OWCP files from an earlier period in time constitutes stale medical evidence for events which occurred in 2018 and therefore are not relevant. *Nieman v. Colvin* 15 cv 451-jdp. (W.D. Wis. 5/10/2016)

<u>Statement</u>

3.      The Court's statement summarizes that Plaintiff  Gwenesther Manning, a retired US Postal Service employee, filed this *pro se* lawsuit against Postmaster General Louis Dejoy alleging disability discrimination in violation of the Rehabilitation Act. Specifically, plaintiff alleges that when she was a Sales Service Distribution Clerk assigned to the 22nd Street Station in Chicago, she was told by her manager, Tiffany Bates, that she could not return to work until her request for light duty had been approved. Am. Compl., Dkt. 19 ¶¶ 4, 34. Plaintiff maintains that Bates put her off the clock from March 2018 to March 2019 because plaintiff reported that she had workplace medical restrictions. *Id*. ¶¶ 33-44. In March 2019, plaintiff met with Bates, who asked plaintiff for medical documentation justifying plaintiff's extended absence. *Id*. ¶ 42. Plaintiff refused to submit the requested documentation because, according to plaintiff, she was not absent from work for medical reasons, but instead simply because Bates decided to put

plaintiff off the clock. *Id.* ¶¶ 43, 44. Plaintiff subsequently returned to duty in April 2019 without being approved for light duty, and she took early retirement from the Postal Service in May 2020. *Id.* ¶¶ 5, 51. Plaintiff alleges that she took early retirement due to the Postal Service's unlawful conduct. Dkt. 19 ¶¶ 4, 34.

**4.** **Plaintiff objects** on the grounds the Court omitted the fact that Plaintiff's charges have evidentiary support of two PS Forms 3971 Notification of Absence signed by Mgr. Bates with the annotations that Plaintiff was instructed to leave and not return to work until approved for light duty attached to the Am. Complt. Exh. A, pgs. 10 & 11. The Court further omitted the fact during discovery, Plaintiff produced Mgr. Tiffany Bate's affidavit and responses to request for admission to facts in which Bates admitted she was the manager who told Plaintiff she could not work until she had been approved for light duty. Dkt. 37, pg. 11¶¶ 1-3, pg. 16 ¶¶ 42 - 44 & pg. **17** ¶ 15. Counsel submitted a second affidavit of Mgr. Bates in which Mgr. Bates admitted she was responsible for Plaintiff not working. Dkt 48, Exh. 7, p. 109¹ ¶¶ 1-3; pg. 114 ¶19 & p. 115 ¶ 21.

**I.** **Applicable Legal Standards**

5. Under the Federal Rules of Civil Procedure, "parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(1). "Information within this scope of discovery need not be admissible in evidence to be discoverable." *Id.* Rule 26 vests the courts with broad discretion in determining the scope of discovery. *See, e.g., Spiegla v. Hull*, 371 F.3d 928, 944 (7th Cir. 2004) (The court has "broad discretion over discovery matters."); *KISS Pharm LLC v. Becker Pro. Dev. Corp*, No. 18 C 7848, 2021 WL 3207822, at *4 (N.D. Ill. July 29, 2021) (same) (citations omitted). Order at pg. 2

**6.** **Plaintiff objects:** Unfair and prejudicial because the information defendant seeks exceeds the proportional needs of the case in light of defendant Mgr. Bates' admission that she was responsible for Plaintiff not working because Plaintiff had restrictions. Defendant's proposed discovery request are outside the scope permitted by Rule 26(b)(1) and gives the appearance of discovery abuse. In the instant case, Counsel's argument that it would be appropriate to unseal its filing was an attempt to put Plaintiff's medical history on public display. Mag. Judge found good cause to maintain defendant's filing under seal given the fact the nature of defendant's filing and exhibits include specific details of plaintiff's medical history. Footnote 1 at pg. 3.

---

¹Plaintiff's copy of Dkt 48 was not numbered so Plaintiff manually numbered the pages. One exhibit was missing a cover sheet which could cause the page number to be off by one.                                        2

Counsel also pulled Plaintiff's personnel file exposing Plaintiff's private information including but not limited to bank account number, insurance beneficiary forms, health insurance enrollment forms which had records dating back to 1998 and farther as demonstrated in Dkt. 40 at pgs. 50 - 53. Given the fact Counsel knew her client admitted putting Plaintiff off the clock as alleged, Counsel's aggressive tactics can be construed as predatory discovery which was "sought not to gather evidence that will help the party seeking discovery to prevail on the merits of his case but to coerce his opposition to settle regardless of the merits ….". *Marrese v. Amer. Academy of Orthopedic Surgeons*, 726 F. 2d 1150, 1162 (7th Cir. 1984). Counsel has repeatedly attempted to bury Plaintiff with thousands of pages of documents which were not requested while not producing the documents requested which are industry specific and used by the unions in the postal service. As of 4/11/22 counsel has produced 5,260 pages of documents. Counsel's actions appear to be designed to frustrate Plaintiff into dropping her Compl.. Plaintiff moved for a Protective Order (Dkt. 40) instead. Mag. Judge did not find any wrong doing by counsel in spite of the documents of record cited in ¶ 4 above. Plaintiff disagrees for the aforementioned reason.

7.     A party may seek an order to compel discovery when an opposing party fails to respond to discovery requests or has provided evasive or incomplete responses. Fed. R. Civ. P. 37(a)(2)-(4) (2018). Moreover, the district court also has "broad discretion to decide when a protective order is appropriate and what degree of protection is required." *Sonrai Sys., LLC v. Romano*, No. 16 CV 3371, 2020 WL 3960441, at *1 (N.D. Ill. July 13, 2020) (citation omitted). The burden "rests upon the objecting party to show why a particular discovery request is improper." *Kodish v. Oakbrook Terrace Fire Protection Dist.,* 235 F.R.D. 447, 449-50 (N.D. Ill. 2006). The objecting party must show with specificity that the request is improper. *Graham v. Casey's Gen. Stores,* 206 F.R.D. 251, 254 (S.D. Ind. 2002).

8.     **Plaintiff objects:**  Unfair and prejudicial because the standards applied by the Court allow defendant's discovery request to exceed the proportional needs of the case in light of the fact Mgr. Bates affidavits are direct evidence that Mgr. Bates put Plaintiff off the clock. Evidence of retaliation is direct when, "if believed by the trier of fact, [it] will prove the particular fact in question without reliance on inference or presumption." *Pitasi v. Gartner Grp., Inc.,* 184 F.3d 709, 714 (7th Cir.1999) (internal quotation marks omitted). "Because direct evidence ... essentially requires an admission by the employer," such evidence "is rare." *Benders v. Bellows & Bellows,* 515 F.3d 757, 764 (7th Cir. 2008). The instant case is one of the rare occasions where there is actually an admission by the employer on record.

## II. Discussion

9.      The parties first dispute the scope of the medical documents that should be available to the government in this litigation. Defendant sought releases from plaintiff to obtain records from several of plaintiff's medical providers, including: (1) Dr. Samuel Chmell, an orthopedic surgeon who treated the back condition plaintiff maintains was responsible for her work limitations; (2) plaintiff's primary care physician, Dr. Kameswari Kalluri; (3) Rush University Medical Center; (4) the Community Health and  Rehabilitation Center, where plaintiff received physical therapy; and (5) the Centers for Digestive Health, which treated plaintiff in 2020. *See* Def's Mot. To Compel, Dkt. 30 at 2-3 & Ex. 2. Plaintiff refused to sign the releases, arguing among other things that her medical records are privileged and irrelevant, and that the government already possesses her records from Dr. Chmell. Order at. Pg. 2

10.      Defendant also issued an interrogatory asking plaintiff to identify all of her medical providers since 2011 and the reasons she sought medical care. *Id*. Ex. 1 at 10. Plaintiff refused to answer the interrogatory, asserting that the requested information was irrelevant and that the government had exceeded its interrogatory limit. *Id*. Finally, defendant informed the plaintiff that it was in possession of documents from her Office of Workers' Compensation (OWCP) file related to plaintiff's work restrictions prior to March 2018. Although the defendant has received a copy of these records, the government requested that plaintiff sign an authorization for the records to be used in this litigation in order to comply with Department of Labor policies and procedures. *See id*. at 2 & n.1. Manning previously authorized release of her OWCP files to Postal Service EEO investigators, but that authorization expired in April 2019. Def's Resp. to Pl's Mot. for Protective Order, Dkt. 48 Ex. 10. Footnote no. 1.

11.      **Plaintiff objects to ¶s 9  10:** Unfair, prejudicial and go outside the scope of the case. The Court does not have jurisdiction over matters concerning the Office of Workers Compensation Programs (OWCP.) The Federal Employees Compensation Act (FECA) established the Secretary of the U.S. Department of Labor (DOL) as the exclusive arbiter of issues regarding federal workers' compensation benefits and proscribes judicial review of such decisions. 5 U.S.C § 8128(b)(2). The Supreme Court has interpreted section 8128(b) as "an 'unambiguous and comprehensive' provision barring any judicial review of the Secretary's determination of FECA coverage." *Sw. Marine*, *Inc. v. Gizoni*, 502 U.S. 81, 90 (1990) (quoting      *Lindahl v. Office of Pers. Mgmt*., 470 U.S. 768, 780 n. 13 (1985)).  This is not a Compl. about OWCP benefits. Plaintiff further objects on the grounds that the Court erred in ruling that defendant can use Plaintiff's OWCP files from 2015 & 2016 to make a determination for Plaintiff's medical condition in 2018.  With the exception of test results, medical reports which predates 2018 is considered as stale medical evidence.  In *Nieman v. Colvin* 15 cv 451-jdp. (W.D. Wis. May 10, 2016) the Court reversed and remanded the case back to Social Security Administration because

4

"The problem   4 with the ALJ's analysis is that she relied on stale medical evidence to support her decision. The consulting examinations and *4 record reviews that occurred in 2013 could not have accounted for the significant limitations that Nieman experienced in 2014, and so the ALJ could not rely on these medical opinions to interpret and discount the more recent medical evidence.  Under OWCP laws, the Board has  held that stale medical evidence cannot form the basis for a current evaluation of symptomology, disability determination, and other medical benefits. Employment Compensation Appeal Board, *J.O. Appellant v. US Postal Service,* Docket 20-0519 (11/30/20) at pg. 5.

12.    Both parties filed motions regarding the foregoing requests. Defendant filed a motion to compel plaintiff to (1) provide medical record authorizations for the five treaters identified above;  (2) authorize defendant to use the documents in her OWCP file in this litigation; and (3) respond to the interrogatory asking plaintiff to identify her medical treaters from 2011 to present. Dkt. 31. Defendant subsequently withdrew its requests for medical authorizations for Rush University Medical Center and the Centers for Digestive Health, leaving requests for three treaters. Dkt. 35; Dkt. 48 at 12.

13.    **Plaintiff objects:**  Unfair and prejudicial because defendants medical release forms which were open ended  meaning defendant could have obtained Plaintiff's medical records from Dr. Chmell dating back to 2000 which is an abuse of discovery considering the merits of the case. Plaintiff did not object to disclosing medical records within  reason.  Counsel did not withdraw the request for Plaintiff's  medical records from (3) Rush University Medical Center for Plaintiff  until Plaintiff exposed the fact that counsel had the wrong person.  Counsel though she saw restrictions for Plaintiff from Rush University among documents defendant produced for Plaintiff.  However, the restrictions counsel  actually saw were the restrictions for Cassandra Glover who was seen at Rush University Medical Center. Dkt. 40 pg. 54 & 55.  Defendant later claimed they were not able to locate restrictions for Cassandra Glover.

14.    Plaintiff then filed a motion for a protective order, seeking to (1) limit medical discovery to just records from January 1, 2018 to April 26, 2019 from Dr. Chmell, her orthopedic surgeon; (2) deny defendant's requests for documents from Dr. Kalluri and the Centers for Digestive Health, and any medical providers who did not treat her back condition; (3) deny defendant's request for the names of Plaintiff's primary care physician and any and all physicians who did not treat her back condition; and (4) deny defendant's request to use plaintiff's OWCP records in this litigation. Pl's Mot. for Protective Order, Dkt. 40.2

15.    **Plaintiff objects:**  Unfair, prejudicial and the discovery request go outside the scope of the case for which the prejudicial value outweigh the probative value. Plaintiff's condition in   5

2015 (stale medical evidence) has no bearing on Plaintiff's condition in 2018. "While [administrative records such as Workers' Compensation awards] may establish a record of the physical impairment, they do not establish a record that the physical impairment created a substantial limitation.". *Veldran v Brennan* 408 F. Supp. 3d 111 (E.D N.Y. 2019.)   The use of Plaintiff's old OWCP files should be limited to establish a record of impairment. Under OWCP laws, the Board has  held that stale medical evidence cannot form the basis for a current evaluation of symptomology, disability determination, and other medical benefits. Employment Compensation Appeal Board, *J.O. Appellant v. US Postal Service,* Docket 20-0519 (11/30/20) at pg. 5.

16.     After the foregoing motions were fully briefed, at the Court's request, the parties filed a joint status report indicating that plaintiff belatedly provided defendant with authorizations to request records from Dr. Chmell and the Community Health and Rehabilitation Center for the period from January 2018 through May 2020. *See* Dkt. 58.

17.     **Plaintiff objects:**    Unfair and prejudicial. Plaintiff provided defendant with authorizations to request medical records from Dr. Chmell, Community Health & Rehabilitation Center and  Occupational Health Centers Of Illinois Concentra on her own accord after counsel refused to limit the open ended medical release forms to the relevant timeframe.

18.     For the following reasons, both defendant's motion to compel and plaintiff's motion for a protective order are granted in part and denied in part. As an initial matter, defendant has demonstrated that documents from the three identified treaters will likely be very relevant to this dispute, which concerns alleged discrimination against the plaintiff due to her back condition. To establish disability discrimination under the Rehabilitation Act, plaintiff must demonstrate that "(1) she is disabled; (2) she is otherwise qualified to perform the essential functions of the job with or without reasonable accommodation; and (3) the adverse job action was caused by her disability." *Patel v. Brennan*, No. 20-CV-2238, 2021 WL 5937769, at *10 (N.D. Ill. Dec. 16, 2021). "Essential functions are 'the fundamental job duties of the employment position the individual with a disability holds or desires.'" *Vargas v. DeJoy*, 980 F.3d 1184, 1188–89 (7th Cir. 2020) (quoting 29 C.F.R. § 1630.2(n)(1)).

19.     **Plaintiff objects:**   Unfair and prejudicial. Unlike a discrimination claim, a claim of retaliation under the Rehabilitation Act does not require that a plaintiff demonstrate she is actually disabled. Section 504 of the Rehabilitation Act, at 29 U.S.C. § 794(d),   expressly incorporates the anti-retaliation provision of Section 503 of the ADA, 42 U.S.C. § 12203, prohibiting retaliation against "any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified,     6

assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter." *Porch v Potter No.* No. 06 C 6322. United States District Court, N.D. Illinois, Eastern Division, Dec. 9/10/08. In order to succeed on a retaliation claim under Section 504, a plaintiff must establish that: (1) she engaged in a statutorily-protected activity; (2) she suffered an adverse action; and (3) there was a causal connection between the two events. *Burks v. Wisconsin Dept. of Transp.*, 464 F.3d 744, 758 (7th Cir. 2006). (1) Plaintiff engaged in protected activity and the grievance process. Dkt. 19, 2nd Am. Compl., pg. 3 & 4 ¶¶¶ 16- 24; (2) Plaintiff's time off the clock from 3/30/18 through her return to duty in 4/11/19 was involuntary and therefore an adverse employment action; and (3) Plaintiff's EEO Compl. went formal on 2/24/18, *Id.* pg. 3¶ 16. Mgr. Bates put Plaintiff off the clock on 3/30/18.

20.    The medical records defendant seeks are relevant to plaintiff's Rehabilitation Act claim. First, plaintiff concedes that records from Dr. Chmell are relevant, and has indeed belatedly agreed to authorize defendant to request her records from Dr. Chmell for the period of January 2018 to May 2020. Defendant does not identify the time period for which it seeks plaintiff's records, and the Court therefore assumes that the subpoenas the government intends to submit to any of plaintiff's providers will not be time limited. The Court agrees with defendant that records from the physician who treated plaintiff for her back condition are likely to be relevant even if they fall outside the period when plaintiff was off the clock (March 2018-April 2019), or even the slightly broader time period for which plaintiff has now agreed to provide an authorization (Jan. 2018-May 2020). This is because medical records from the period both before 2018 and after May 2020 can bear upon whether plaintiff suffered from a covered disability during the period at issue in this suit, or whether plaintiff was able to perform the duties of her job, both of which are essential elements of a Rehabilitation Act claim. *See Hodgdon v. Nw. Univ.*, 245 F.R.D. 337, 344 (N.D. Ill. 2007) (medical records are relevant to show plaintiff was qualified to perform the essential functions of his job). They also bear upon plaintiff's damages—and specifically, plaintiff's assertion that defendant's conduct, and not her medical issues, forced her to take an early retirement. The Court does not agree, however, nor does defendant provide a sufficient basis for the idea, that it should be given *carte blanche* to request plaintiff's medical records dating back possibly decades; accordingly, defendant's motion to compel medical authorizations from Dr. Chmell is granted for the period of 2015 to present.

21.    **Plaintiff objects:** Unfair and prejudicial on the grounds that medical records which predates 2018 have limited probative value and can only serve to establish a record of impairment. As previously discussed and supported by case law, stale medical evidence from 2015, 2016 and/or 2017 can not be relied upon to make a determination as to Plaintiff's condition in 2018. The Court relied upon Hodgdon to make its ruling. In Hodgdon, the university sought Professor Hodgdon's medical records because Hodgdon was attempting to return to work which is distinguished from the instant Compl. Because Plaintiff was working and removed from active

7

duty after working eight (8) months at 22nd St. Station with restrictions. Defendant could have requested that Plaintiff undergo a fitness for duty. Plaintiff's medical evidence which predates 2018 is considered to be stale. *Nieman v. Colvin* 15 cv 451-jdp. (W.D. Wis. May 10, 2016)

22.   **Court:**   The other records sought by the government are likewise relevant and discoverable. Plaintiff's records from the Community Health and Rehabilitation Center appear to directly bear upon the back condition at the center of this lawsuit. Indeed, it appears that Dr. Chmell referred plaintiff to Dr. David Barnes at the Community Health and Rehabilitation Center for physical therapy and lumbar spine decompression in response to her back condition. Dkt. 48-1, Ex. 9. Plaintiff also testified at her deposition that certain medical restrictions she provided to her managers were signed by Dr. Barnes. Dkt. 48-1, Ex. 1 at 92-93. And as with Dr. Chmell, plaintiff has   belatedly agreed to provide defendant an authorization to request records for the period from January 2018 to May 2020.   As to Dr. Kalluri, that doctor was plaintiff's primary care physician (*see* Dkt. 48-1, Ex. 1 at 187), and what plaintiff may have told (or failed to tell) her primary care physician regarding her alleged back condition and any other physical restrictions bears upon plaintiff's alleged disability, her ability to otherwise perform her job, and whether the alleged discrimination caused her retirement. The Court will therefore grant the government's motion to compel authorizations for these two providers, for the same time period of 2015 to present.

23.   **Plaintiff objects:**   Unfair and prejudicial. Plaintiff   strongly objects to the Court's reasoning that what Plaintiff may have told (or failed to tell) her primary care physician regarding her alleged back condition and any other physical restrictions bears upon plaintiff's alleged disability. Plaintiff also testified   during her deposition that it was her former podiatrist who first diagnosed her back condition after doing a nerve study in 1999.   Once the diagnosis of Plaintiff's back condition was made, Dr. Wood, a podiatrist,   advised Plaintiff that her condition was outside his field of medicine and referred Plaintiff to another doctor. Dkt. 48, Ex. 1 at 42.   From that point on, Plaintiff did not and does not discuss her back condition with doctor for which her back condition is outside his or her field of medicine. The Court erred in assuming that the possibility exist that what Plaintiff said or did not say to her primary care physician has a bearing on the case.

24.   **Court:**   For largely the same reasons, the documents in Manning's workers' compensation ("OWCP") files are relevant to this case, and the Court will authorize their use in this litigation. In 2015, plaintiff filed a workers' compensation claim related to a hip injury. In 2017, plaintiff filed a workers' compensation claim due to a back strain, bulging discs, arthritis in her back, and degenerative disc disease. Dkt. 48-1, Ex. 4. Defendant already possesses the OWCP files related to these claims, and indeed produced them to plaintiff as part of its initial disclosures. Defendant nonetheless maintains that it may not make use of the files without either a court order or a release from plaintiff, pursuant to a memorandum of understanding between the Department of Labor & the Postal Service. Manning previously provided such a release to

Postal Service EEO investigators, but the release expired on April 22, 2019. Dkt. 48-1, Ex. 10. As with the medical records discussed above, the documents in plaintiff's OWCP file are likely to be relevant to plaintiff's alleged disability, her ability to perform her duties, and whether the alleged discrimination forced her to retire. The Court therefore authorizes their use in this case.

25.    **Plaintiff objects:**  Unfair and prejudicial. OWCP matters are outside of the Court's jurisdiction. 5 U.S.C § 8128(b)(2).  Defendant's Exh 4 is a claim that Plaintiff submitted for an injury which occurred in 2016 while Plaintiff was stationed at Irving Park. Plaintiff worked under a different  manager and supervisors.  The injury occurred when Plaintiff was forced to work truck detail outside of her restrictions.  That incident caused an aggravation of Plaintiff's back condition and has absolutely no bearing on the matter before the Court.  Restrictions which predate 2018 constitutes stale medical evidence as discussed earlier.  It appears that defendant is relying upon old OWCP decisions as a defense for not providing Plaintiff with light duty work. Similarly in *Craig H. Germain, Complainant, v. John E. Potter, Postmaster General, United States Postal Service EEOC Appeal No. 0120082877,* it was adjudicated that the Postal Service cannot use an OWCP decision as a reason for not providing a reasonable accommodation. Plaintiff disagrees with Mag. Judge because OWCP files are limited to work related injuries or conditions and again the OWCP files are stale medical evidence.  Light Duty known as not work related conditions are covered under Article 13 of the Collective Bargaining Agreement.

26.    **Court**:    Finally, the Court grants defendant's request that plaintiff respond to Interrogatory 18, which asks her to identify her healthcare providers from 2011 to the present, including the dates she saw each provider, the reasons she sought medical care, and the name of any hospital or medical care facility to which she was admitted. Plaintiff objected that the request was irrelevant and unreasonably duplicative and cumulative because the government already has access to her medical records. Plaintiff also objected that the defendant exceeded the maximum number of interrogatories.

27.    **Plaintiff objects:**  Unfair and prejudicial. Plaintiff objected to Defendant's interrogatory no. 18 for Plaintiff to identify all of her health care providers dating from 2022 present back to 2011.  Plaintiff complied with the order and produced the names of twenty-nine (29) medical providers she has seen over the past ten years.  It took Plaintiff three days to comply with the Court's order. The processing was time consuming and can be construed as a form of predatory discovery sought to punish and discourage Plaintiff into abandoning this Compl..  Plaintiff affirms her objection on the grounds defendants discovery request exceeded  the proportional needs of the case pursuant to Fed. R. Civ. Proc. 26(b)(1).

9

28. **Court:** Plaintiff's objections are overruled. As noted above, plaintiff's medical history is relevant to several issues in this lawsuit, and only plaintiff is aware of all of the medical treatment that she has received. Although the defendant appears to have access to some piecemeal portions of plaintiff's medical records, there is nothing indicating that the documents in the government's possession are a complete representation of plaintiff's treatment in recent years. Defendant's interrogatory understandably requests a complete list of plaintiff's treaters to enable the defendant to identify any additional third parties who may possess documents relevant to this litigation.

29. **Objection:** Plaintiff objects on the grounds defendants discovery request exceeded the proportional needs of the case pursuant to Fed. R. Civ. Proc. 26(b)(1). Defendant discovery request to use Plaintiff's stale OWCP files which predates the events of 3/30/18 is improper. Stale medical evidence (OWCP files) can not be used to make a determination about Plaintiff's condition years after the fact. *Nieman v. Colvin* 15 cv 451-jdp. (W.D. Wis. May 10, 2016)

30. **Court**: While the Court understands that plaintiff believes that information about treaters other than Dr. Chmell is irrelevant to this dispute, plaintiff is not permitted to unilaterally determine the treaters for which she will provide information. Nor has defendant exceeded the interrogatory limit; while a number of defendant's interrogatories "ask for lists of items, these do not constitute discrete subparts as they are devoted to single sets of information or themes." *Hangzhou Aoshuang ECom. Co. v. 008fashion*, No. 19 C 4565, 2020 WL 3429735, at *2 (N.D. Ill. June 23, 2020).

31. **Objection:** Plaintiff objects on the grounds defendants discovery request exceeded the proportional needs of the case pursuant to Fed. R. Civ. Proc. 26(b)(1). The Court erred in granting defendant permission to use Plaintiff OWCP files from 2015, 2016 and 2017 ,which constitute state medical evidence, in litigation to make a medical determination about Plaintiff medical condition years after the files were created. A medical determination should be made on the medical evidence most contemporaneous to the time frame of 3/30/18 - 4/2019. The matter before the Court is for a violation of the rehabilitation act which is independent of matters pertaining to OWCP which are under the exclusive authority of the Secretary of Labor.

31. Mag. Judge acknowledged Plaintiff allege she took early retirement due to the postal service unlawful conduct. Pg. 1. Plaintiff's allegations are supported by grievance decisions in the record in Plaintiff's Motion for Protective Order, Dkt. 40, Exhs. M - U, pgs. 13 - 48.

32. Plaintiff's stated objections stand in order to preserve Plaintiff's right to object at a later date and or to avoid an unintentional waiver of rights to defend against the defendant's arguments made in bad faith.

*10*

**WHEREFORE:** The Court should enter a modified order that :

1.      Limits defendant's use of Plaintiff's OWCP files and/or old medical records to establish a record of impairment.

2.      Limit the use of Plaintiff's medical records which predates the event of 3/30/18 to medical records most contemporaneous to Plaintiff's medical condition during the applicable timeframe.

Respectfully submitted:

Gwenesther Manning, *Pro Se*

CERTIFICATE OF SERVICE

I, Gwenesther Manning, certify that Plaintiff's Objections to Minute Order Dkt. 61 was sent via email on  April 13,  2022 and First Class Mail to Virginia Hancock, AUSA at 219 S. Dearborn, St., 5th Fl, Chicago, IL 60604.

Gwenesther Manning, Pro Se
19214 Lange Street
Lansing, IL 60438
312-622-5783
Keeppushing55@yahoo.com