**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| GWENESTHER MANNING, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 21 C 1440 |
| v. ) | |
| ) | Judge Ronald A. Guzmán |
| LOUIS DEJOY, Postmaster General, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff, Gwenesther Manning, is a retired United States Postal Service ("USPS") employee who brought this pro se action against the USPS for disability discrimination and retaliation in violation of the Rehabilitation Act of 1973, 29 U.S.C. § 791 *et seq*. The USPS moves for summary judgment under Rule 56 of the Federal Rules of Civil Procedure. For the reasons explained below, the Court grants the motion.

**MATERIAL FACTS**

Plaintiff was a longtime employee of the USPS prior to her retirement in 2020. It is clear from the history set out by the parties that plaintiff's employment was contentious, involving her numerous complaints and grievances, including complaints regarding accommodation of work restrictions.[1] Some of those complaints form the backdrop for this dispute.[2]

---

[1] Perhaps as a reflection of this history, the parties have included several facts in their Local Rule 56.1 fact statements that are not material to the Court's ruling on defendant's motion. They also quibble over those facts and the admissibility of certain documents. The Court has disregarded those portions of the parties' submissions that are immaterial to the issues on summary judgment.

[2] Because her discrimination claim is no longer before the Court, plaintiff raises relevance objections to defendant's fact statements pertaining to her employment history and complaints prior to and after March 2018. As to the facts recited by the Court, those objections are overruled because this history is essential context for the events from which plaintiff's retaliation claim arises. Plaintiff's view of the scope of relevant evidence is unreasonably narrow. Furthermore, the Court has set out a more comprehensive summary of plaintiff's complaint history because even after a review of plaintiff's response brief, it remains unclear exactly which of plaintiff's prior protected activities are the basis for her retaliation claim. Because the Court has overruled the relevance objections, plaintiff does not in the alternative admit or dispute the employment-history facts to which she objects, and defendant submits and cites supporting evidence, the Court deems those facts admitted. *See* N.D. Ill. LR 56.1(e)(2) ("In the event that [an] objection [to a LR 56.1 statement] is overruled, the failure to admit or dispute an asserted fact may constitute a waiver.").

Plaintiff worked as a letter carrier for many years. In 2015, she requested and received certain accommodations for a disability, based on a diagnosis of lumbar radiculopathy. She subsequently moved to a position as sales service distribution associate ("SSDA") at the Irving Park post office in Chicago. The duties and responsibilities of an SSDA include distribution of mail. In 2017, plaintiff submitted another disability accommodation request, and an interactive process involving various reassignment, modification, and accommodation offers and requests ensued. In April 2017, plaintiff submitted a workers' compensation claim for an injury to her lower back sustained in December 2016 and caused by pushing equipment into the post office. In July 2017, while the workers' compensation request was pending, plaintiff sought and received an SSDA position at a different location in Chicago, the 22nd Street post office.

In January 2018, plaintiff was offered a modified job assignment in relation to the December 2016 injury. This limited-duty assignment still involved distribution. Plaintiff accepted the modifications "under protest," stating on the modified-assignment form that the duties were still "outside of [her] restrictions per walking, standing, [and] lifting intermittently[,] not continuous." (ECF No. 92-2, Def.'s Ex. 10.) Shortly thereafter, in January 2018, plaintiff submitted (in conjunction with her workers' compensation proceedings) a Duty Status Report, also known as a "CA-17" form, completed and signed by one of her physicians. The physician noted plaintiff's diagnosis of lumbar radiculopathy; stated that plaintiff could not climb, kneel, bend, stoop or twist and could stand and walk only intermittently for a reduced number of hours per day; and recommended a "sedentary position" for plaintiff. (ECF No. 92-2, Def.'s Ex. 11 at 1.) In another CA-17 report signed by plaintiff's physician on February 15, 2018 and submitted by plaintiff in March 2018, the physician recommended "sedentary position or disability retirement" and stated that plaintiff could stand and walk only intermittently for one hour per day, could not bend or twist, and was limited to pulling or pushing 20 pounds at a time (rather than the 70 pounds required for the position). (*Id.* at 2.) On March 14, 2018, plaintiff's 2017 workers' compensation claim was denied by the Department of Labor's Office of Workers' Compensation Programs.

Around the same time, plaintiff filed complaints regarding her medical restrictions. On February 16, 2018, plaintiff's union submitted a grievance on her behalf that requested "reasonable accommodation" for her "per her restrictions." (ECF No. 92-2, Def.'s Ex. 12.) On February 27, 2018, plaintiff filed a formal complaint with the USPS's Equal Employment Opportunity ("EEO") office in which she alleged that managers Debra Brown, Genesis Green, and "Ms. Cumming" had discriminated against her on the basis of a disability, in 2017 and ongoing, by "ignoring [her] restrictions." (ECF No. 92-2, Def.'s Ex. 14 at 1.) Plaintiff asserted in the complaint that there was a "need to revisit" her assignment, explaining that her distribution duties were too strenuous. (*Id.* at 3.) She stated, among other things, that it was "impossible" for her to "sort post without some bending or twisting" and that although she had told her supervisors that she could not "work post" for longer than 4 hours, they had instructed her to continue to "work post" or "go home." (*Id.* at 4.) Plaintiff sought compensatory damages and requested that her position be changed to "a sedentary position." (*Id.* at 4, 6.)

On March 2, 2018, plaintiff gave her supervisor, Talena Franks-Cummings, a written "request for temporary light duty" (a modified job assignment to accommodate a non-work-related injury). (ECF No. 92-2, Def.'s Ex. 15; ECF No. 92-2, Def.'s Ex. 1, Dep. of Gwenesther Manning

2

at 117-18.) Part A of the request form, which is the section for employees to complete, states in pertinent part: "I have attached appropriate medical documentation to support my request." (Def.'s Ex. 15.) At her deposition, plaintiff testified that she "may have given" Franks-Cummings "a copy of [her medical] restrictions," but she "know[s]" she told Franks-Cummings "that they were already on file," meaning that they were in plaintiff's "station file." (Manning Dep. at 117-18.)

The next day, on March 3, 2018, plaintiff spoke for the first time to a new supervisor, Tiffany Bates. It was Bates's first day on the job at the 22nd Street post office as a customer-service manager. Plaintiff approached Bates and asked her if they could have a conversation about plaintiff's restrictions. According to plaintiff, she told Bates that she had a back condition but did not go into detail, and Bates responded that they would "talk about it." Plaintiff says that she spoke to Bates again on March 5 and told Bates that other managers had her working reduced hours but that she was able to work more hours. Then, on March 29, 2018, plaintiff had a "brief conversation" with Bates in which she asked Bates for approval for official time to work on an EEO matter and presented Bates with a USPS Form 1110 request for approval of this time.[3] (*Id.* at 141-42.) Bates said that she was not familiar with the form and would have to ask someone about it, so she told plaintiff to bring the form back the following day, March 30.

According to plaintiff, when she spoke to Bates on March 30, Bates sent plaintiff home, informing plaintiff that due to her medical restrictions she could not let her work until she had been approved for light duty. Plaintiff testified at her deposition that during that conversation, Bates also "gave [plaintiff] back the form that was signed on March 2 where it said light duty work was not available." (*Id.* at 148.) On Part B of the form, which states that it is "to be completed by employee[']s immediate supervisor and submitted to the Postmaster" and refers to "the medical restrictions outlined on the accompanying Physician or Practitioner's Certification," there is an "X" in the blank next to the designation "Work **IS NOT** Available In My Unit," and it is further noted: "No medical restrictions outlined was [sic] submitted by employee. This is the only form submitted." (Def.'s Ex. 15.) The form appears to have been signed by Franks-Cummings and another supervisor, Genise Green, and both signatures are dated March 2, 2018.

Plaintiff says that during her conversation with Bates on March 30, 2018, she requested a Form "3971," which is a "Request for or Notification of Absence." (Manning Dep. at 148.) She and Bates completed and signed the form, on which Bates appears to have written "employee is not limited duty; employee does not have an approved light duty case; informed employee to submit light duty request," and plaintiff appears to have written "I am instructed to leave work and that I cannot return until I have been approved for light duty." (ECF No. 95, Pl.'s Ex. 34.)

Bates stated in a USPS EEO Investigative Affidavit that she had reviewed the CA-17 medical-restriction documentation plaintiff had submitted in March 2018 and confirmed with the injury-compensation department that plaintiff did not have an open workers' compensation claim at the time; she was informed that plaintiff had submitted to Franks-Cummings on March 2, 2018 a request for light duty without the necessary medical documentation; and Bates was not herself

---

[3] The USPS evidently has a policy that permits employees to request reasonable "official time," which appears to be time that would otherwise be spent on work assignments, to prepare certain materials relating to EEO proceedings. (ECF No. 95, Pl.'s Ex. 32.)

3

authorized to approve light-duty requests. (ECF No. 92-2, Def.'s Ex. 17.) Bates further stated that plaintiff's medical condition was a factor that she had considered in that she had concluded that plaintiff could not perform all of the physical requirements of her assigned position.

Plaintiff went home from work on March 30, 2018 and did not return to work until April 2019. Various proceedings took place during that period; plaintiff (1) in April 2018 amended her February 2018 EEO complaint to add a claim that Bates had discriminated and retaliated against her by telling her that she could not work until she was approved for light duty; (2) in July 2018 submitted a light-duty request, which was denied on the basis that there was no work available that would satisfy plaintiff's medical restrictions; (3) in September 2018 filed an EEO complaint alleging that the USPS retaliated against her and failed to accommodate her disability when it denied her light-duty request in July; and (4) in April 2019 submitted a request for reasonable accommodation, after which plaintiff was permitted to return to work with modified job duties. In March 2020, after additional conflict over plaintiff's job duties, plaintiff retired from the USPS. In June 2020, the USPS EEO Office issued a final agency decision against plaintiff on plaintiff's September 2018 complaint. In November 2020, plaintiff's request for reconsideration of the affirmance of a final agency decision against plaintiff on her February 2018 EEO complaint was denied.

In March 2021, plaintiff filed the instant action, which is based on Bates's taking her "off the clock" on March 30, 2018 and instructing her "that she could not return to work until her request for light duty had been approved." (ECF No. 19, 2d Am. Compl. ¶¶ 15, 25.) The Second Amended Complaint contains two counts for violation of the Rehabilitation Act. Count I is a discrimination claim. Count II is a claim that Bates acted in retaliation for plaintiff's having "engaged in the EEO and EEOC process which are protected activities as well as the collective bargaining agreement's grievance process." (*Id.* ¶ 26.)

In May 2022, the Equal Employment Opportunity Commission reversed the USPS's June 2020 final agency decision, concluding that the USPS violated the Rehabilitation Act by failing to accommodate plaintiff from July 2018 through April 2019. Subsequently, on June 2, 2022, plaintiff voluntarily dismissed Count I, her discrimination claim in this case. Defendant moves for summary judgment on the remaining claim for retaliation.

## DISCUSSION

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A factual dispute is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Davis v. Kayira*, 938 F.3d 910, 914 (7th Cir. 2019). The Court construes the evidence and all inferences that reasonably can be drawn therefrom in the light most favorable to the nonmovant—here, plaintiff. *See Kvapil v. Chippewa Cnty.*, 752 F.3d 708, 712 (7th Cir. 2014). The Court does not "assess the credibility of witnesses, choose between competing reasonable inferences, or balance the relative weight of conflicting evidence." *Jackson v. Ill. Dep't of Com. & Econ. Opportunity*, No. 21-1168, 2022 WL 3009598, at *3 (7th Cir. July 29, 2022) (citation omitted).

As the movant, defendant has the initial burden of informing the court why a trial is not necessary. *See Modrowski v. Pigatto*, 712 F.3d 1166, 1168 (7th Cir. 2013). Where the nonmovant bears the ultimate burden of persuasion on a particular issue, the movant's initial burden may be discharged by pointing out to the court that there is an absence of evidence to support the nonmovant's case. *Id.* Upon such a showing, the nonmovant must then "make a showing sufficient to establish the existence of an element essential to that party's case." *Id.* (citation omitted). The nonmovant need not produce evidence in a form that would be admissible at trial, but she must go beyond the pleadings to demonstrate that there is evidence upon which a jury could reasonably find in her favor. *Id.* at 1168-69 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251 (1986)).

Plaintiff's claim is that Bates's action of putting her off the clock on March 30, 2018 was in retaliation for protected activity. (ECF No. 96, Pl.'s Mem. Opp'n Def.'s Mot. Summ. J. at 3.) To survive summary judgment, plaintiff must present evidence sufficient to create a dispute of material fact that (1) she engaged in statutorily protected activity; (2) she suffered an adverse employment action; and (3) there is a causal link between the protected activity and the adverse action. *See Lauth v. Covance, Inc.*, 863 F.3d 708, 716 (7th Cir. 2017). The Court considers all of the record evidence to determine whether a causal link exists. *Id.*

Defendant does not dispute that Bates's putting plaintiff "off the clock" constituted an adverse employment action. Defendant also concedes that plaintiff's EEO complaints constitute protected activity but argues that her union grievances do not. To qualify as statutorily protected activity, a complaint or grievance has to specify a connection to the protected class at issue or provide facts to create such an inference. *McHale v. McDonough*, 41 F.4th 866, 872 (7th Cir. 2022) (citing, *inter alia*, *Tomanovich v. City of Indianapolis*, 457 F.3d 656, 663 (7th Cir. 2006)). The fact that plaintiff filed EEO and EEOC complaints and union grievances does not make those activities statutorily protected; the substance of those complaints must have implicated her alleged protected class of disability. Defendant contends that plaintiff's grievances are not statutorily protected because they were not premised on disability discrimination. Plaintiff may not have used the magic word "disability" in those filings, but she was requesting accommodations for her claimed disability of lumbar radiculopathy, as she had been doing for years. For purposes of the instant motion, the Court will therefore assume without deciding that the grievances qualify.

Defendant also argues that there is no evidence of a causal link between Bates's action and any of plaintiff's protected activity. As to this element of plaintiff's claim, the Court agrees. "To establish a causal relationship between the protected activity and an adverse action, a plaintiff must show that the decisionmaker was aware of the protected activity at the time the alleged retaliation occurred." *Noll v. Bd. of Regents*, No. 21-3176, 2022 WL 2113081, at *3 (7th Cir. June 13, 2022) (internal punctuation and citation omitted); *Lesiv v. Ill. Cent. R.R.*, 39 F.4th 903, 915-16 (7th Cir. 2022) ("Knowledge of the protected activity is necessary to show causation for a retaliation claim. A supervisor simply cannot retaliate against an employee for engaging in protected activity if the supervisor was not aware of the protected activity in the first place.") (citations omitted). It is not sufficient that Bates could have or even should have known about the protected activity; she must have had "actual knowledge" of it for her decision to have been retaliatory. *Lesiv*, 39 F.4th at 915; *Luckie v. Ameritech Corp.*, 389 F.3d 708, 715 (7th Cir. 2004).

5

As noted above, it is not clear which of plaintiff's prior protected activities are the basis for her retaliation claim. Plaintiff repeatedly cites defendant's concession that she engaged in protected activity, but notably, she does not elaborate on exactly which activity she believes Bates knew about. Plaintiff appears to rely at least in part on what she refers to as her "last two grievances." (Pl.'s Mem. Opp'n Def.'s Mot. Summ. J. at 3.) Although plaintiff has a long history of union grievances and EEO and EEOC complaints related to her alleged disability, there is no evidence that Bates was privy to that history. Indeed, she had just arrived at the 22nd Street post office on March 3, 2018, and the evidence is that plaintiff and Bates had very little contact between then and the end of March. Bates was not the subject of plaintiff's complaints or grievances that were filed prior to March 30, 2018, and plaintiff fails to submit evidence that Bates was involved in or notified about those proceedings prior to that date. Plaintiff asserts that at the time, she had "three out of four back pay awards pending for grievances that were decided" in her favor as well as a "back pay award pending for a 2016 EEOC decision." (*Id.* at 3.) But plaintiff does not elaborate on the nature of the "three or four" awards to demonstrate that they implicated her protected class of disability or that knowledge of a "pending award" would entail knowledge about the substance of the complaint from which the award arose, *see McHale*, 41 F.4th at 872, nor does she point to any evidence from which a reasonable juror could conclude that Bates knew about the grievances. As for the back pay award arising from the 2016 EEOC decision, plaintiff points to a document that she calls a "file copy of [plaintiff's] settlement check for her back pay award (protected activity) decided in 2016 in the amount of $34,567" that was sent to the 22nd Street post office "on or around 3/26/18." (*Id.* (citing ECF No. 95, Pl.'s Ex. 30).) The document, titled "typewriter check payment" and listing plaintiff as the payee of a $35,371.27 award with deductions totaling $14,717.13, states "backpay award for 01/10/2015 to 10/23/2015" under the heading "reason for check." (Pl.'s Ex. 30.) The document contains no other substantive information about the amounts that were being paid to plaintiff. It bears the following address: "Gwenesther F Manning/Postal Official in Charge/Manager/2035 S State St/Chicago IL 60616-9998." (*Id.*) Plaintiff speculates that one can infer from this generic address that Bates received this document prior to March 30 and thus knew about her protected activity to which the payment related, but she submits no evidence that the "Postal Official in Charge/Manager" designation referred to Bates, in theory or in practice, and no evidence that Bates received the file copy, let alone by March 30. At most, the address may indicate that Bates *should have* received the document, but it is insufficient to permit a reasonable inference that Bates had the required *actual* knowledge that plaintiff had engaged in statutorily protected activity or that Bates would have been able to glean from the document that plaintiff had engaged in statutorily protected activity.

Plaintiff further argues: "If Bates did not retaliate against [plaintiff] in the beginning, Bates surely retaliated against [plaintiff] after [she] amended her EEO Complaint No. 4J-606-0034-18 to include Bates for Bates putting her off the clock." (Pl.'s Mem. Opp'n Def.'s Mot. Summ. J. at 3.) But plaintiff's amendment to that complaint occurred on April 9, 2018; Bates's action on March 30, 2018 could not have been in retaliation for protected activity that came later. *See Durkin v. City of Chi.*, 341 F.3d 606, 614-15 (7th Cir. 2003) ("It is axiomatic that a plaintiff engage in statutorily protected activity before an employer can retaliate against her for engaging in statutorily protected activity.")

That leaves plaintiff's reliance on the fact that Bates's action occurred the day after plaintiff requested the allocation of official time to work on an EEO matter. (Pl.'s Mem. Opp'n Def.'s Mot.

6

Summ. J. at 3-4.)  In her statement of additional material facts, plaintiff states that she requested time to work on an "affidavit," (ECF No. 95, Pl.'s LR 56.1 Stmt. Add'l Facts ¶ 21), and the form plaintiff submits and cites in support of that statement, Plaintiff's Exhibit 31, is a request for time to work on an "appeal" of a final agency decision in a specific pending EEO matter.  While plaintiff complained of disability discrimination and retaliation in that matter, (ECF No. 100-1, Def.'s Ex. 36), her time-request form did not so state, nor did it contain anything about the substance of the EEO matter.  It is also unclear whether Bates even saw the form; plaintiff testified that she "tried to present" Bates with it and that Bates told her to return with it the following day. (Manning Dep. at 141-42.).

Even assuming for purposes of the instant motion that Bates saw the form and that the request for official time constituted protected activity, suspicious timing is rarely enough to create a triable issue, *Serir v. Community College District No. 514*, No. 21-2696, 2022 WL 807864, at *3 (7th Cir. Mar. 16, 2022), and any inference of causation that is supported by temporal proximity may be negated by circumstances providing an alternative explanation for the challenged action, *Jokich v. Rush University Medical Center*, 42 F.4th 626, 634 (7th Cir. 2022).  The analysis is context specific; here, any weak inference that arises from timing is insufficient to create a genuine issue as to causation, given the circumstances.  Plaintiff's assertion that Bates's action had to have been retaliatory because it "came out of nowhere," (Manning Dep. at 143, 146), is belied by the evidence that plaintiff had spoken to Bates in early March about her restrictions and that plaintiff had submitted a request for light duty earlier in March and her previous supervisor had noted she had failed to provide the necessary medical documentation.  Bates stated that upon making inquiries, she ascertained that plaintiff had requested light duty without submitting necessary documentation.  She also stated that she reviewed plaintiff's medical restrictions and concluded that plaintiff could not perform all of the physical requirements of her assigned job position.  There is no evidence that indicates that this explanation was pretext for a retaliatory motive; plaintiff relies on sheer speculation.  The issue is whether Bates honestly held these views, not whether she exercised poor judgment, made a mistake, or acted unfairly.  Plaintiff and Bates had a very limited history as of the end of March 2018.  Plaintiff requested official time to work on an EEO matter that had no connection to Bates, and there is no indication that Bates would have viewed it as having had any connection to her.  Plaintiff concedes that Bates said nothing to her about EEO complaints or protected activity during their meeting on March 30.  Her attempts to show pretext by isolating certain statements in Bates's EEO affidavit miss the mark because those statements, when properly read in context, do not undermine Bates's explanation.  The Court is also unpersuaded by plaintiff's argument that pretext can be inferred because Bates "proposed [plaintiff's] removal from the postal service on 2/11/19." (Pl.'s Mem. Opp'n Def.'s Mot. Summ. J. at 6.)  To support that assertion, plaintiff relies on an "AWOL report," a document attached to an email between other USPS employees in February 2019, when plaintiff had not yet returned to work. (ECF No. 95, Pl.'s Ex. 35; ECF No. 100-1, Def.'s Ex. 33.)  The report listed employees whose termination from employment was evidently "proposed," and each entry included a notation for who was "overseeing discipline."  Plaintiff was included on the list, and Bates was specified as overseeing discipline.  But the report does not indicate that it was Bates who had proposed termination, and it does not allow a reasonable inference that Bates's explanation for having taken plaintiff off the clock in 2018 was phony.  Plaintiff fails to identify any evidence that would allow a factfinder to reasonably infer that her request for time to work on an EEO matter caused Bates to put her "off the clock."

7

Next, plaintiff argues that her claim should survive summary judgment under the "indirect approach," under which she must offer evidence that she engaged in protected activity; suffered a materially adverse employment action; was meeting defendant's legitimate expectations; and was treated less favorably than similarly situated employees who did not engage in protected activity. *See Williams v. Bd. of Educ.*, 982 F.3d 495, 509 (7th Cir. 2020). Regarding the third prong of this analysis, defendant points to evidence that plaintiff was not physically able to perform the distribution-related duties of her job and thus was not meeting legitimate expectations. Plaintiff repeatedly told the USPS in early 2018 that she could not perform distribution duties and needed a sedentary job. Plaintiff fails to respond directly to this argument and merely contends that her "training records . . . demonstrate that she was performing her job satisfactorily." (Pl.'s Mem. Opp'n Def.'s Mot. Summ. J. at 5.) Those records, however, do not demonstrate that plaintiff was meeting her employer's expectations; they reflect only that plaintiff took certain training classes. (ECF No. 95, Pl.'s Ex. 38.) As to the fourth prong of the analysis, plaintiff fails to identify any similarly situated individuals who did not engage in protected activity. She contends that an employee named Cassandra Glover who had the same job title received better treatment because she was allowed to work, including overtime, with restrictions. But plaintiff does not address or present evidence regarding the critical fact of whether Glover had engaged in protected activity. Defendant, on the other hand, produces unrebutted evidence that Glover had filed several EEO complaints. Therefore, plaintiff has not set out any comparators who are within her protected class.

The ultimate question is whether the evidence would permit a reasonable factfinder to conclude that Bates retaliated against plaintiff for her statutorily protected activity. *See Igasaki v. Ill. Dep't of Fin. & Pro. Regul.*, 988 F.3d 948, 959-60 (7th Cir. 2021). Because plaintiff has not met her burden of so demonstrating, the Court will grant defendant's motion.

## CONCLUSION

Defendant's motion for summary judgment [90] is granted. Final judgment will be entered in favor of defendant and against plaintiff on plaintiff's retaliation claim in Count II. Plaintiff having previously voluntarily dismissed Count I, there are no remaining claims to adjudicate. Accordingly, this action is terminated.

**DATE:** November 8, 2022

**Hon. Ronald A. Guzmán**
**United States District Judge**

8